## WOLFE v. BASS FURN. & CARPET CO.
## BASS FURN. & CARPET CO. v. WOLFE.

No. 18909, 18921, Consolidated. Opinion
Filed Dec. 23, 1930.

Rehearing Denied Oct. 13, 1931.

Application for Leave to File Second
Petition for Rehearing Denied
Oct. 20, 1931.

Rainey, Flynn, Green & Anderson, Pryor & Stokes, B. F. Davis, J. A. Patterson, and C. Dale Wolfe, for plaintiff in error.

Wilson & Wilson, Huggins & Huser, and Blakeney & Ambrister, for defendant in error.

TEEHEE, C. In the trial court the parties to this cause occupied the reverse of their positions here. We will so treat them in this court.

On March 5, 1926, plaintiff, the Bass Furniture & Carpet Company, a corporation, brought suit against defendant, C. Dale Wolfe, to establish a trust in its favor in a certain 40-acre tract of land situated in Seminole county, to declare defendant, in whose name the title of record appeared, as the trustee thereof, to terminate the trust, to quiet its title, and for possession of the property, and for an accounting of the rents and profits derived from the property by the trustee for the time of his possession.

By its amended petition filed on June 1, 1926, plaintiff alleged the creation of the trust through the relationship of attorney and client between the parties in certain litigation wherein the defendant was employed as its attorney through plaintiff's general attorneys, Wilson, Tomerlin & Buckholts, and in the course of the litigation became the holder of the legal title to the lands involved for the use and benefit of plaintiff who was the equitable owner thereof.

Plaintiff's allegations of fact were under two causes of action. In the first, the facts alleged, in substance, were, to wit:

Plaintiff, in 1912, for merchandise sold to one George F. Killingsworth, took his promissory notes aggregating $500, and in security thereof the promisor gave to plain-

tiff a real estate mortgage upon an undivided ⅓ interest in and to the N. W. ¼ of N. E. ¼ of section 23, twp. 9 north, range 6 east, situated in Seminole county, state of Oklahoma, containing 40 acres more or less. The lands were a part of Seminole Indian lands allotted to one Judie Rentie, deceased, and the mortgaged interest therein was acquired by the mortgagor from one of the heirs of the estate.

Thereafter other heirs brought suit to declare the deed whereunder mortgagor acquired his interest to be a mortgage. Plaintiff intervened by defendant as its attorney, and set up its mortgage, and alleged that it was an innocent party in respect to the transaction between the mortgagor and his grantor, and sought foreclosure of its mortgage. Plaintiff's plea was sustained and the mortgage foreclosed, and the interest thereby represented in the property was ordered to be sold in satisfaction of plaintiff's judgment, which was for the principal amount of the mortgage indebtedness of $500, and $212.48, as accrued interest, and which judgment carried with it $30 as attorneys' fee, and for plaintiff's costs. At the foreclosure sale, plaintiff, by its bid of $300, acquired the undivided ⅓ interest in the property, which was evidenced by a sheriff's deed dated January 9, 1917.

Thereafter, on March 21, 1917, for the purpose of converting plaintiff's ⅓ interest in the property into cash, which defendant, as its attorney, then indicated could be sold for $200, and that thereby an action for the partition of the property among the several coparceners thereof would be avoided, and that such sale would likely be more advantageous to his client, requested that plaintiff execute a quitclaim deed to its interest in blank, which he would fill in with the name of the grantee upon sale thereof. This deed was executed by plaintiff on March 24, 1917, and contrary to the purpose thereof, defendant filled in the blank with his own name as grantee, and without consideration to plaintiff therefor and without its authority placed such deed on record.

Thereafter, on July 14, 1917, plaintiff's general attorneys made inquiry of defendant as to the status of the sale of plaintiff's ⅓ interest in the property for the purpose of which the quitclaim deed was executed by plaintiff. Therein, defendant, on July 20, 1917, advised plaintiff of his failure to make the sale, and that the partition sought to be avoided would be proceeded with, and that plaintiff would be advised in the further progress of that cause.

Thereafter, through the partition proceedings, plaintiff, at the election of its attorney, the defendant, made on its behalf by him, purchased the other outstanding undivided ⅔ interest in the property, the value of the whole estate being fixed by appraisement at $800, this being the basis of the purchase price, which was evidenced by a sheriff's deed dated March 2, 1918.

Thereafter, on March 18, 1918, to enable him to handle plaintiff's interest thus acquired in such manner, so as to obtain "money out of the same at the earliest possible time, which will be much sooner than it otherwise can be obtained," defendant requested plaintiff to execute and place in his hands its warranty deed in blank covering the whole title to the property, to which request plaintiff's general attorneys, on March 22, 1918, replied and advised defendant of the sufficiency of the quitclaim deed for that purpose theretofore executed by plaintiff, which was then in the possession of defendant.

Thereafter, on March 23, 1918, defendant renewed his request and stated the reasons therefor, to wit:

"We have yours of the 22nd, and in reply I especially desire the warranty deed requested of client, the Bass Furniture & Carpet Company, so that the claim of title looks proper, and so that the proper amount may be obtained for the property. I cannot see that any additional liability would be assumed by client in doing this, as their title is protected by a decree of court which we obtained in the partition suit.

"The partition suit was in the name of client, as plaintiff, against all other claimants, to an interest in the land, and we elected, in the name of client, to take the land at the appraisement, and thereupon we obtained from the court a decree vesting the whole title in client, and directing the sheriff to make a deed to the whole to client, upon the payment of the other interests proportionally. This is the reason I ask for the deed from client, as requested, for upon receiving the same I can then obtain the sheriff's deed and will pay out the proportionate interest, and the title will then inure to me under the deed from client, as requested. This will perfect the title in me, and I will be able then to dispose of the land for which it is worth and get client's share of the money out of the same at the earliest time."

Pursuant to this latter request, plaintiff, on April 27, 1918, executed the warranty

deed to defendant, which was placed of record by him on April 30, 1918.

Plaintiff's petition further proceeded, to wit:

"6. That the said C. Dale Wolfe, as the trustee and legal owner of the one-third undivided interest, holding for the use and benefit of this plaintiff for purposes of sale as set forth in plaintiff's 'Exhibit A' (the sheriff's deed in the mortgage case) and conveyed to the said C. Dale Wolfe by plaintiff's 'Exhibit D' hereto (plaintiff's quitclaim deed) has not sold said property or any part of the same, and so acknowledged that he had not sold the same or any part thereof according to 'Exhibit F' hereto (defendant's advice that sale had not been made under the quitclaim deed); that subsequent to the 27th day of April, 1918, the said C. Dale Wolfe has not sold the said land or any part thereof; has not offered to sell the same, and is not now offering to sell the same, or making any effort to dispose of said land; but, on the contrary, has placed real estate mortgages against said land, collecting the proceeds therefrom and claiming to be owner; that not only has he placed real estate mortgages against said land, but he also has placed oil and gas leases on said land, collecting the bonus and annual rentals thereon and therefrom, appropriating said bonus and annual rentals to his own use and benefit, claiming to be the owner of the same; that the said C. Dale Wolfe has also leased said land for agricultural purposes from and since the year 1917, collecting rents and profits therefrom and appropriating the same to his own use and benefit, all of which was done and performed by the said C. Dale Wolfe, without the consent of the Bass Furniture & Carpet Company, plaintiff herein, and violating of the trust under which he was holding the said land, that of sale, accounting to plaintiff for the proceeds thereof.

"7. That at all times herein mentioned the said C. Dale Wolfe was the agent and attorney of record for the said plaintiff in handling its litigation in the district court and other courts in Seminole county, Okla.; that the said C. Dale Wolfe, mentioned as grantee in a certain quitclaim deed marked 'Exhibit D' herein, and as grantee in a certain warranty deed, marked 'Exhibit J' herein, was holding the land mentioned in said 'Exhibits D and J' in trust for the use and benefit of the plaintiff herein, for the sole and only purpose of selling said land, accounting to this plaintiff for the proceeds of said sale, and that all times mentioned herein this plaintiff was and is the owner of the entire equitable estate in and to said land with legal thereto vested in said C. Dale Wolfe for purposes of sale, as aforesaid."

By the second cause of action, the allegations of fact were, in substance and effect, the same as the allegations contained in the first above-quoted paragraph in respect to defendant's handling the property as his own rather than as trustee.

Upon unsuccessful demurrer, defendant answered with denial of "each and every allegation contained in said amended petition except herein otherwise stated."

Defendant further answered that plaintiff's warranty deed of April 27, 1918, was an absolute conveyance of the full title to the property to defendant, and

"That the said plaintiff has never made any claim to said land, rents, or the income therefrom, or questioned said sale or said warranty deed since that date, until the filing of this action on the 5th day of March, 1926, four days after oil, in large quantities, had been discovered in the next section adjoining this land, and when the land involved in this action had greatly increased in value; that, on the 1st day of March, 1926, four days prior to the filing of this suit, the famous Seminole oil pool was discovered by drilling into the oil paying sand of the discovery well in said pool, by the Indian Territory Illuminating Oil Company, in the center of section 24, township 9 north, range 6 east in Seminole county, Okla., just three-quarters of a mile east of the land involved in this action, and said well produced large quantities of high grade oil, over 2,000 barrels per day, and numerous other wells were immediately commenced surrounding said well, and near the property involved in this action, and from which the now famous Seminole oil pool, which now has reached a peak of production of 120,000 barrels per day, was discovered and developed; and the value of the property involved in this action immediately jumped in value from its previous value of $800 to at least 150 times that previous value; and about four days thereafter this suit was filed, making the first claim to said property by plaintiff since the execution of said warranty deed, April 27, 1918, and said suit would never have been filed if said land had not thus greatly increased in value; and said suit was filed for the sole purpose to extort something from this defendant; that four wells are now drilling on said land involved in this action."

And, further, that defendant was not plaintiff's attorney at the time of the execution of the warranty deed; that thereafter he purchased the respective shares of the other parties adjudged to be coparceners with plaintiff in the partition suit, paid all costs, fees, and expenses therein, and all taxes against the property since 1908; that the mortgage and lease transactions re-

ferred to in plaintiff's petition were had by him as the owner of the property, and not as trustee for plaintiff, the first of such transactions being a mortgage given by him on May 28, 1919, and the last being an oil and gas lease given by him on May 23, 1922. copies of all of such transactions being attached and by exhibit made a part of his answer; that subsequent to the filing of this suit, and in the perfection of his title, he secured on May 19, 27, and 28, 1926, quitclaim deeds from certain of the heirs of the estate of Judie Rentie, deceased, and their successors in interest, copies of such instruments by exhibit being made a part of his pleading.

Defendant further pleaded matter constituting res judicata of plaintiff's alleged cause of action, for that on July 10, 1919, in an administration case upon the estate of said Judie Rentie, deceased, of whose estate the land involved originally was a part, the county court of Seminole county adjudged and decreed defendant to be the owner of the property, and in whom the title was confirmed by final decree of distribution, copy of the decree being by exhibit made a part of his pleading.

Defendant further pleaded, to wit:

"This defendant further states that the statute of limitations of the state of Oklahoma has run against said plaintiff bringing or maintaining this action long prior to the time of filing this suit, and the said plaintiff is barred from bringing or maintaining this suit, and of obtaining the relief sought; that the said plaintiff has been guilty of laches in asserting any claim against said land and against this defendant, for a period of over eight years, until oil was discovered in large quantities adjoining said land, as aforesaid, and said land had suddenly increased in value to 150 times its former value; that said defendant would not have brought said suit had oil not been discovered in large quantities adjoining this land, and if it had not thus so greatly increased in value, and plaintiff cannot now maintain said action to rescind its sale of said land and warranty deed to this defendant, and is barred and estopped from so doing; that said plaintiff has known ever since the execution and delivery of said warranty deed to this defendant in 1918, that this defendant paid all the partitioned interests in said land, costs, and expenses of said partition suit and taxes on said land, as aforesaid, and which is shown by plaintiff's amended petition and the exhibits attached thereto, and the plaintiff's claim now to the entire interest and estate in and to said land is so unconscionable and inequitable as to shock the conscience of any court of equity and to deny said plaintiff any relief whatsoever in this cause."

And—

"That this defendant is in the actual possession of said land, and the unconscionable, void and illegal claim of the plaintiff thereto, which is barred by the statute of limitation and by the equitable limitation, constitutes a cloud upon the title of this defendant in and to said land, and harrasses, annoys, and greatly damages him in the use and occupation thereof, and should be decreed void and the title in and to said land quieted in this defendant."

Plaintiff by reply to the answer denied "generally and specifically each and every allegation therein contained, except such as are hereinafter specifically admitted, or otherwise dealt with," which, under plaintiff's qualifications, in substance and effect, went to a reiteration of the fiduciary relationship of the parties as attorney and client, whereunder the title to the property acquired by defendant inured to the use and benefit of plaintiff under the trust relation, and further offered to refund and restore to defendant all sums of money legally expended by him in plaintiff's behalf in the foreclosure and partition proceedings, with legal rate of interest thereon, and reasonable attorney's fee therein, and, if there be any sum due him after accounting of rents and profits, to pay said sum and save defendant harmless in said matters, which offer and tender applied to expenditures made prior to the filing of this suit.

Upon the issues framed by the pleadings, the cause, on May 23, 1927, went to trial to the court, whereat defendant objected to introduction of any evidence by plaintiff, for that the amended petition did not state facts sufficient to constitute a cause of action against him; that plaintiff's claim of a purported trust in the property was void under the statute of frauds, trusts, and uses; that plaintiff was estopped to claim any interest in the land by virtue of its warranty deed; that plaintiff's purported claims of causes of action were barred by the statute of limitation; that plaintiff was guilty of laches, and its claims thereby were barred and by equitable limitations; that plaintiff was estopped in the case by receiving benefits under its warranty deed; that plaintiff did not come into court with clean hands; and that plaintiff was estopped and barred by the decree of distribution had in the county court of Seminole county, whereunder defendant was decreed to be the absolute owner of the property which was by the court distributed to him as such owner thereof.

On the objection, the court reserved judgment until the testimony was heard. At the conclusion of plaintiff's evidence, defendant demurred thereto for insufficiency thereof to establish plaintiff's right of relief against defendant. Decision thereon also was likewise reserved. At the conclusion of the hearing, the objection and the demurrer were overruled.

The evidence in the case consisted mainly of numerous exhibits comprising the correspondence between the parties beginning with the employment of defendant by plaintiff as its attorney in the mortgage foreclosure action in 1915, to within a few days of the filing of the case in hand, conducted almost entirely by plaintiff's general attorneys with defendant; the record or particular parts thereof in the mortgage, partition, and administration cases; and the various title and other transactions affecting the property had through the cases mentioned and by defendant with third parties subsequent to plaintiff's warranty deed of April 27, 1918; and supplemented by oral testimony tending to either clarify or amplify such exhibits in their purport and intent or interpretation thereof by the parties under the circumstances whereby they were brought into existence, where that class of evidence was by the court regarded to be admissible and as shedding light upon the various transactions entering into the case.

From the evidence, the court, on May 24, 1927, found the existence of the fiduciary relationship of attorney and client between the parties "in all matters in relation to litigation alleged and stated in plaintiff's petition, and that said fiduciary relation existed until the 12th day of August, 1920, when the litigation and the relationship as client and attorney ceased." And, further:

"That on the ____ day of March, 1918 (which, in fact, was April 27, 1918) the date and day on which the plaintiff executed its warranty deed and delivered to C. Dale Wolfe, its attorney, it was with the understanding and agreement between plaintiff and defendant that said deed was delivered by plaintiff to the defendant to be held in trust by the defendant for this plaintiff, and that no consideration was paid therefor; that the deed so executed by plaintiff to the defendant was without consideration and made only as a convenience for the defendant to sell said land and to account to plaintiff for all sums secured by virtue of said sale less a reasonable attorneys' fee which the defendant was entitled for services as attorney by virtue of his employment as such.

"That, after the defendant received said deed, he recorded the same on the 30th day of April, 1918, thereafter, the record title to said land was in the defendant.

"That subsequent to the delivery and recording of said deed the defendant instituted in the county court of Seminole county, Okla., a certain action to determine the heirship as to the land in controversy, and that in said decree the county court rendered judgment decreeing that the defendant was entitled to an undivided 11/12ths interest in said land.

"That, after the decree of heirship was entered and on the 12th day of August, 1920, the defendant by written notice to the plaintiff notified it that he repudiated the trust imposed and elected to treat the land in controversy as his own, notifying plaintiff that the deed it executed to the plaintiff conveyed legal title, and he intended to rely upon the written terms of the said deed, and that he owned said land.

"That, after the execution and delivery of said deed by the plaintiff to the defendant, the defendant made no accounting to the plaintiff as to the income or profits which the land produced, and treated same as his own.

"That the defendant expended in improvements and taxes about the sum of $1,600; that he received rents and profits from the said land in the sum of $1,620; that since the execution of said deed and the repudiation of said trust by the defendant, the defendant has paid all taxes and other sums in securing outstanding interests and perfected the title in him.

"That when said deed was delivered by plaintiff to defendant there was the sum of $200, which plaintiff claimed was due by reason of said judgment, and that said amount is still due with interest at 6 per cent. thereon from the 29th day of April, 1918, and that plaintiff had paid $77.55 costs, which said amounts inured to the benefit of the defendant, and that in equity and good conscience defendant should pay to plaintiff said amount with 6 per cent. interest on the $200 from the date and day that said deed was recorded, and 6 per cent. interest on the $77.55 from the 29th day of March, 1920, the date which defendant gave notice and repudiated the trust agreement which had heretofore been made at the time said deed was delivered.

"That, on the 12th day of August, 1920, the defendant notified plaintiff that he did not hold said deed in trust and repudiated and breached his agreement with plaintiff, and from said date the statute of limitation commenced to run, and that it was the duty of the plaintiff to commence an action within the statutory time to enforce said trust agreement, and that it failed to do so within the time provided by law.

"Conclusions.

"The court therefore concludes that the statute of limitation has run against said agreement, and that the plaintiff is not entitled to the relief asked in its petition, and by reason thereof judgment is entered for the defendant, the petition is dismissed for want of equity, and judgment and journal entry shall be entered in accordance with these findings of facts and conclusions of law. To which findings of facts and conclusions of law the plaintiff excepts. Exceptions allowed.

"Dated this 24th day of May, 1927.

"Geo. C. Crump, District Judge."

"To all which findings the defendant at the time excepts.

"That, thereafter, on 27th day of May, 1927, said plaintiff filed its motion for new trial in said cause, which came on for hearing before said court on the 30th day of May, 1927; and on said day of May, 1927, said plaintiff requested the court to make additional findings; and thereupon the court made and entered the following additional findings to conform to oral findings made on the 24th day of May, 1927, and decisions:

"The court further finds that the trust imposed by the parties continued until the 12th day of August, 1920, on which date the defendant wrote the plaintiff a letter repudiating said trust agreement, said letter of repudiation reads as follows:

" 'August 12, 1920.
" 'Wilson, Tomerlin & Threlkeld,
" '806 State Natl. Bank Bldg.,
" 'Oklahoma City, Oklahoma.

" 'Dear Sirs:
" 'Re: Renties v. Killingsworth.
" 'Replying to yours of July 29, beg to say that we fully advised client in this matter under date of May 29, as follows:

" ' "Replying to yours of the 28th, with reference to your claim in the Killingsworth matter, beg to say that we fully advised your Mr. Geo. L. Rose, treasurer of your company, on April, 19.

" ' "You seem to have a total misconception of the status of this matter. The Rentie heirs first filed suit, making you one of the parties, in which they sought to cancel your claim to the property, and in which we succeeded in obtaining foreclosure on a one-third interest, and had to buy it in for self-protection, as neither you nor the heirs wanted to do so. Then we filed a partition suit in which the land was sold again, and neither you nor the heirs wanted to buy it, and we bought it in at the appraised value, $800 and paid for it, except as to your portion thereof, which we then arranged with you in this way; you conveyed to us

by full warranty deed, with the understanding that when we could get the title straightened up and realize something out of the land, we would pay your proportionate share of said appraisement, less our fees. I personally explained this to your Mr. Randle in your store one day before you executed to me the warranty deed, and it was satisfactory. We also have put through an administration upon the estate of the deceased allottee, and had heirship decreed. We now have a suit against us for another partition, by a party claiming to own one-twelfth interest, which we have paid for once, and will have to fight this out before we can dispose of this much litigated title, which has caused us more work than we will realize out of it, so, in the circumstances, having done all this work and paid out our money for the land, we will of necessity have to be the one to sell the land when we deem it proper, after we get the title straightened out. And in the circumstances, you can readily see that your warranty deed to me could not be returned to you. We will see that your proportionate share is paid to you, as agreed, when the title is perfected." '

" 'I trust this conveys the information desired. The partition suit is pending, and I cannot say when it will be disposed of.

" 'Yours very truly, C. Dale Wolfe.

"And that the trust agreement entered into by the parties by the execution of the warranty deed, a trust agreement was intended by the parties to be in the land and not the money.

"The court further finds that there was no written agreement regarding the trust except the warranty deed and the letters shown by the correspondence and the verbal contract and statement of the parties at the time.

"The court further finds that after August 12, 1920, the relationship created by said trust between the parties terminated; that the defendant, C. Dale Wolfe, continued to act in the capacity as an attorney for the plaintiff for the purpose of remitting to the plaintiff the amount of money evidenced by the judgment of foreclosure, together with the costs; that the continuance of an attorney and client continued, as shown by exhibit '69,' being a letter to Messrs. Wilson, Tomerlin & Threlkeld representing the plaintiff at Oklahoma City, exhibit being No. 69.

"And that the additional findings of fact above set forth was made at the request of plaintiffs attorneys.

"And to all the foregoing findings and decisions of the court, both the plaintiff and defendant excepted at the time, and which exceptions are by the court allowed.

'Thereupon the plaintiff also moved the court for judgment on said findings of the court, which motion was presented to the court together with plaintiff's said motion for new trial; and the court having heard the argument of counsel for both plaintiff and defendant on said motion for new trial and said motion of the plaintiff for judgment on said findings, and the second and third motions for new trial filed by plaintiff on May 30, 1927, overrules all of said motions, to which the plaintiff excepts.

"It is therefore, by the court, ordered, adjudged and decreed that the said plaintiff, the Bass Furniture & Carpet Company, a corporation, be and it is hereby awarded a one-third undivided interest in 11/12ths of said land involved in this action, to wit: 'The northwest quarter of the northeast quarter of section 23, township 9 north, range 6 east;' and the said defendant, C. Dale Wolfe, be and he is hereby awarded two-thirds undivided interest in and to the 11/12ths of said land involved in this action, to wit, the northwest quarter of the northeast quarter of section 23, township 9 north, range 6 east, in Seminole county, Okla. To which judgment and decision in favor of said plaintiff the defendant excepts. To which judgment in favor of the defendant, plaintiff excepts. And the said plaintiff and defendant are each adjudged to pay one-half the costs in this action."

Plaintiff's exhibit 69, referred to in the additional findings by the court, was a letter by defendant dated February 10, 1922, addressed to plaintiff's general attorneys at Oklahoma City, in reference to plaintiff's interest in the property acquired by it under the mortgage foreclosure action wherein the mortgagor subsequently became a bankrupt, and advised that plaintiff's interest would be unaffected by certain bankruptcy proceedings then pending, and in which letter it was stated, to wit:

"We formerly advised the status of the Bass Furniture Company claim which we handled, and as soon as we can realize from the land, we will forward them their share of proceeds."

To such part of the findings and judgment favorable to the one of the parties the other excepted, and therefrom the parties by separate proceedings perfected their appeals to this court, defendant's appeal being No. 18909, and plaintiff's appeal being No. 18921, which appeals, in the disposition we shall make of the cause, may properly be considered together in a single opinion, for which reason it is now ordered that the two appeals be and they are hereby consolidated under the style of the case in No. 18909, and to bear that number.

Our consideration first will be directed to defendant's complaint of the judgment in the respect that thereby the court erroneously awarded to plaintiff a ⅛ undivided interest in the 11/12ths of the property involved.

From the nature of the case, its being one in equity, and the course of the trial thereof as is reflected by the court's findings and the judgment, it is patent that appellate disposition turns on the question of whether or not the part of the judgment complained of is against the clear weight of the evidence in that relation.

Independent of that proposition, defendant assigns seven other distinct reasons for reversal, each of which he contends furnishes a sufficient ground therefor, and which he argues at great length. These seven additional reasons propound the theories: (1) That the action is barred by the statute of limitations; (2) that the action is barred by laches; (3) that plaintiff cannot maintain this action for that it failed to join therewith the action of ejectment; (4) that section 2 of article 22 of the state Constitution prohibits plaintiff from acquiring any interest in the land involved; (5) that plaintiff has not come into court with clean hands; (6) that the decree of distribution by the county court of Seminole county is res judicata of plaintiff's claims; and (7) that the trial court, after its judgment of dismissal of the action on May 24, 1927, and without reinstating the case, was without jurisdiction to make additional findings and to render the judgment appealed from.

It is apparent that, in the state of the case, several of these seven reasons are not justiciable thereunder, and the others are eliminated, if the judgment of the court is to be sustained on the ground that it is not contrary to the clear weight of the evidence.

Under the pivotal proposition, defendant contends that if there was a trust agreement established between the parties by that evidence relied on by plaintiff for that purpose, and thereby was created the relationship of trustee and cestui que trust between defendant and plaintiff concerning the property involved, which evidence consisted mainly of certain correspondence between them in relation to the warranty deed of April 27, 1918, it constituted such a contract as was brought within the statute of frauds, and therefore was void, wherefrom no justiciable claim of rights of plaintiff in the property could arise. It is urged also, for that reason, that defendant's de-

murrer to the petition, his objection to the introduction of any evidence by plaintiff, and his demurrer to such evidence, should have been sustained for that plaintiff's allegations of fact were based on the evidence mentioned. As these successive objections culminate in the contention of the insufficiency of the evidence to support the judgment complained of, they need not be separately considered.

In this relation, defendant relies on sections 5240, 8465, and 8466, C. O. S. 1921. The first of these sections provides that no contract of interest in real property "shall be valid until reduced to writing and subscribed by the grantors;" the next defines an express trust in real property; and the last provides that "no such express trust shall be valid unless created, first, by a written instrument subscribed by the grantor or grantors duly acknowledged, as conveyances of real estate are acknowledged," etc. Supplementing these provisions of law, defendant cites many adjudications, both by this court and other jurisdictions, which have considered many phases of the principles of the statutes cited and other provisions in relation to the effect of instruments of conveyance of the kind whereunder defendant asserts title as against plaintiff's title to a 1/3 interest in the property awarded to it under the partition proceedings.

The rules of law predicated on the statutes mentioned, which are familiar to bench and bar and to realtors, may be said to constitute the measure of the rights of parties in the ordinary transactions in the marts of realty trade and traffic, and are controlling in the ordinary case, and this is true even though one of the parties to such transactions perchances to be an attorney at law. See Korte v. Brown, 124 Okla. 282, 255 Pac. 1103; Tillman v. Gazaway, 128 Okla. 183, 261 Pac. 935.

We do not regard the cause in hand to be of the class subject to the rules of law relied on by defendant. Here the relation of attorney and client existed. The evidence shows that this relation arose three years prior to the deed asserted by defendant to have conveyed to him outright plaintiff's interest in the property, and so continued to the filing of this suit.

In the language of Gooch v. Peebles, 105 N. C. 411, 11 S. E. 415:

"An attorney is licensed by the state to practice law, and is thereby invested with certain rights and privileges, which impose upon him correlative duties and obligations. He is an officer of the courts in which he may practice, and occupies a quasi-official relation to the public."

This judicial concept of the status of an attorney has long been the law of the land, and finds legislative expression in this state, as is evidenced by sections 4095 and 4097, C. O. S. 1921, prescribing the oath and the duties of an attorney.

Thereunder, in his relationship as an attorney for a client, nothing short nor less than scrupulous good faith in the observance of his duties is required of him. Jones v. Brown, 140 Okla. 155, 282 Pac. 313. He is not permitted to deal in the subject-matter of his employment without the knowledge and consent of his client, irrespective of the question of good faith or fairness in the transaction. Board of Commissioners of Okfuskee County v. Hazelwood, 79 Okla. 185, 192 Pac. 217. And whenever he deals in the subject-matter with the knowledge and consent of his client, and his dealings be challenged, the burden rests upon him to prove the utmost good faith and fairness in the transaction, and where this involves the purchase of property in which his client is interested, he must prove that he paid an adequate consideration therefor. Minton v. Roberts, 119 Okla. 32, 247 Pac. 662; Watts v. Jackson, 75 Okla. 123, 182 Pac. 508; Mohr v. Sands, 44 Okla. 330, 133 Pac. 238, and 144 Pac. 381.

Under the foregoing authorities, it may now be regarded as an established rule of law that, during the existence of the relationship of attorney and client, the attorney is a trustee of the highest order for his client in the cause or subject-matter of the litigation in which he is employed, and that the accrual of any benefits from any transaction made by him in his trust character affecting the rights of his client in the subject-matter of the litigation inures to the benefit of the client. When, therefore, the defendant in this case secured from his client the warranty deed, which the court found was given to him as a convenient means in the handling of plaintiff's interest in the property, defendant then knew that the transaction would be subject to the scrutinizing eye of a court of equity in the event the same should be drawn into question.

Measured by the foregoing rules of law, plaintiff's warranty deed of April 27, 1918, though on its face it passed plaintiff's title to defendant, nevertheless, in the circumstances of its execution and delivery, created a trust in an undivided 1/3 interest in the property in favor of plaintiff, with the de-

fendant as the trustee thereof, by operation of law, and therefore the transaction did not depend upon the provisions of law and the rules established thereunder relied on by defendant to create such trust and trusteeship. Section 8462, C. O. S. 1921; J. I. Case Threshing Mach. Co. v. Walton Trust Co., 39 Okla. 748, 136 Pac. 769; Bobier v. Horn, 95 Okla. 8, 222 Pac. 239.

As plaintiff's interest had not been disposed of pursuant to the purpose of the execution and delivery of the warranty deed, defendant ought not to complain of the trial court's preventing his further continuing to deal with plaintiff's interest as his own as had been the case from the time of its delivery, which was clearly contrary to the expressed intentions of the parties and so disclosed by the correspondence between them, which, in itself, was sufficient to constitute a trust agreement within the meaning of the statute of frauds, uses and trusts, if that were necessary. Atwood v. Rose, 32 Okla. 355, 122 Pac. 920; Barnes v. Hunt, 73 Okla. 92, 175 Pac. 215; Massie-Wilson Gro. Co. v. Carroll, Brough, Robinson & Humphrey, 105 Okla. 56, 231 Pac. 1084.

And, we may remark, the proffered settlement of plaintiff's 1/3 interest in the property on the basis of its appraised value at the time of the partition suit, without defendant's having sold such interest, which was tendered five days before the case in hand was filed, cannot operate to defeat plaintiff of the increased value of the property inured to it under the circumstances of the case, which value at the time of such proffered settlement, according to defendant's own testimony, had increased by 25 times the value on which the offer of settlement was made.

A detailed statement of the evidence upon which the court predicated its findings and judgment in this relation would not subserve any useful purpose It is sufficient to say that, measured by the oft-repeated rule in the consideration of judgments in equity cases in respect to the evidence on which they are founded, we are not prepared to say that the judgment here is against the clear weight of the evidence. In the justice thereof we therefore find no error therein.

However, at the oral argument of the cause, it was pointed out by plaintiff that there was error in respect to the quantity of the interests of the parties as decreed by the court. As noted, the judgment fixed plaintiff's interest at 1/3 of 11/12ths of the whole fee in the property, and defendant's interest at ⅔ of such 11/12ths. It cannot be gainsaid that plaintiff originally, in the mortgage action, acquired an undivided 1/3 interest in the whole fee of the 40-acre tract, which was confirmed to it in the partition action.

In the administration proceedings, the court found the heirs and adjudged them as the distributees, and further found that the defendant here, Wolfe, had acquired the interests of all of the distributees, and thereupon decreed the whole title of the estate to be in defendant. Plaintiff's interest in the estate came through the husband of the original owner, an Indian allottee. The devolution of the estate occurred in 1910, and, under the law of succession, the surviving spouse's interest was fixed on the basis of ⅓ of the estate.

The effect of the judgment here reduces plaintiff's fixed ⅓ interest in the property from a ⅓ of the whole estate to ⅓ of a 11/12ths thereof. This error in computation arose doubtless from the fact that defendant's evidence disclosed that there was still outstanding a 1/12th interest in the property which he had not in fact acquired. This outstanding interest can only affect defendant's interests in the whole fee of the estate.

The judgment therefore in respect to the quantity of the interests of the litigants in the property involved must necessarily be modified to fix such interests in conformity to the law of succession, whereunder plaintiff's interest must be fixed at an undivided ⅓ interest in the whole fee of the 40-acre tract, and with defendant's interest at 7/12ths of the whole fee, and to that extent the judgment is hereby so modified.

Plaintiff's Appeal in the Same Case.

We now direct our attention to plaintiff's appeal in the case. Its ground of complaint against the judgment goes to that part thereof whereunder defendant was awarded an undivided ⅔ interest in the 11/12ths of the property.

Plaintiff proceeds on the theory that, under the proceedings had in the partition case, it became the owner of the whole title to the property, and that its tender and offer to save defendant harmless in the expenditures made by him in plaintiff's behalf to the time of the filing of this suit, if the rents and profits were insufficient to reimburse him, was sufficient to authorize confirmation of the whole title held by de-

fendant in plaintiff under the evidence in the record, and that refusal of the court to so adjudge and decree was error.

What we have said in our consideration of the force of the evidence in respect to defendant's appeal is here applicable in respect to the evidence upon which the phase of the judgment complained of by plaintiff is predicated.

We may add that the record shows that plaintiff was informed by defendant of the course of the proceedings had in the partition case. Plaintiff was advised by both its general attorneys and defendant that perfection of title pursuant to the judgment in partition required the outlay of a sufficient sum of money in the payment of the other coparceners for their respective shares in the undivided ⅔ held by them. Plaintiff's general attorneys also suggested that it make an independent investigation of the' property. This, we may fairly infer from the record, was done by one of plaintiff's officers, and that thereupon plaintiff by its president refused to advance such sums of money as should be necessary for the purpose indicated, whereupon the agreement for the execution and delivery of its warranty deed of April 27, 1918, was entered into.

It may be that defendant did not meet the full measure of his duties to his client in every detail in respect to his dealings with the property as his own in its entirety subsequent to the delivery to him of the warranty deed by plaintiff, but it may be said that measurably, at least, he met the obligation under which he then rested as defined by the rules of conduct of an attorney to his client above adverted to. It must have been obvious to plaintiff, whose officers having to do with the matter were men apparently of large business experience, that in defendant's dealings with the property under the arrangement which induced its warranty deed benefits might accrue by enchancement in the value thereof just as that did transpire.

In the circumstances of the case, we are impelled to the conclusion that plaintiff was placed on its guard, and that it acted advisedly in respect to the situation in which it found itself. In the consideration of this phase of the case, the trial court must have proceeded on the theory that plaintiff, under the arrangement made with defendant, pending a sale of the property by him, intended the resultant common ownership of the property with defendant in such proportions as their respective interests may appear to be thereunder. It is axiomatic that a person intends the consequences of his own acts. As a legal proposition, therefore, it must follow that where, in an action of partition, as a means of convenient disposition, an attorney elected to take the whole estate for his client at the appraised value thereof, and, after confirmation of such election by judgment of the court, the attorney advised his client to complete the purchase of the interests of the client's coparceners, and the client refused to do so, whereupon the attorney, with the knowledge and consent of his client, purchased such interests himself, he did not hold the title thereto in trust for his client. Webber v. Wannemaker, 39 Colo. 425, 89 Pac. 780.

As in the case of defendant's appeal, we think the judgment of the court in plaintiff's appeal cannot be said to be against the clear weight of the evidence, for which reason no error is found in the justice thereof, except that it must be modified in respect to the quantity of the interest of the litigants in the property involved, as has already been above pointed out in our consideration of defendant's appeal, and to that extent it is hereby so modified.

It follows that the judgment of the district court in respect to both appeals as hereby modified is affirmed.

REID, LEACH, HERR, and DIFFENDAFFER, Commissioners, concur. CLARK and SWINDALL, JJ., dissent.

By the Court: It is so ordered.

---

CLARK, J. (dissenting). The dissenting opinion filed herein December 23, 1930, is withdrawn, and this opinion filed in lieu thereof on rehearing. The majority opinion prepared herein by Commissioner Teehee and approved by the affirmative vote of Lester, V. C. J., Hunt, Riley, Cullison, and Andrews, JJ. The fac's in this case, briefly stated, are as follows:

The Bass Furniture & Carpet Company took a mortgage on 40 acres of land in Seminole county, suit was filed, and C. Dale Wolfe appeared for the Bass Furniture & Carpet Company, and was successful in having the mortgage foreclosed on an undivided one-third interest in and to the 40 acres involved. The Bass Furniture & Carpet Company tried to sell the undivided one-third interest and could not do so. Later, a partition suit was filed by C. Dale Wolfe, representing the Bass Furniture & Carpet Company. The land was ordered partitioned

by the district court and commissioners were appointed who refused to partition the land in kind and appraised the same. The Bass Furniture & Carpet Company elected to take the land at its appraised value. Later, when the land was conveyed by sheriff's deed to the Bass Furniture & Carpet Company, it refused to pay for the two-thirds interest. An agreement was entered into by which Mr. Wolfe was to take over the land, pay for the two-thirds interest, and pay the Bass Furniture & Carpet Company one-third of the appraised value for its interest, less cost and attorneys' fees, which was $200. Pursuant to that agreement, the Bass Furniture & Carpet Company executed its warranty deed to Mr. Wolfe on April 27, 1917, conveying to Wolfe all right, title, and interest in and to said estate. Said deed was placed of record. Wolfe paid the obligations of the Bass Furniture & Carpet Company to the other interested parties in said land, and has since that time been in possession. This suit was brought on March 5, 1926, more than seven years after the warranty deed was executed by the Bass Furniture & Carpet Company to C. Dale Wolfe. The record further discloses that this land was of little or practically no value until just a few weeks before this suit was brought. An oil well brought in near this property made it a very valuable property. The Bass Furniture & Carpet Company, acting through its attorneys, brought suit to declare a trust.

The record shows that the Bass Furniture & Carpet Company did not claim any interest in this land and made no attempt to claim any interest in it prior to the discovery of oil near the same a few weeks before this suit was brought. The testimony of Mr. J. R. Huggins, attorney for the Bass Furniture & Carpet Company, discloses that he called attention of the Bass Furniture & Carpet Company to the fact that there might be a lawsuit. At page 174 of the record his testimony is as follows:

"Q. You had examined the records? A. I had examined the records. Q. You knew he had bought the title from the heirs? A. No, sir, the record showed it in the name of the Bass Furniture & Carpet Company. Q. Who did the title finally invest in? A. C. Dale Wolfe, under warranty deed and previously a quitclaim deed. Q. Did you take this matter up with Wilson & Wilson? A. I took it directly up with the Bass Furniture Company. Q. When? A. I wrote them and then received a letter from Wilson. Q. How did you happen to write that letter? A. I was making an investigation. Q. An investigation? A. That has nothing to do with this case. Q. Well, was it for the Bass Furniture Company or Wilson? A. Neither one. Q. That had no connection with you, and you found a lawsuit and wrote them? A. I was on an investigation for other parties and found this."

Prior to that time the Bass Furniture & Carpet Company had not made any claim that the warranty deed conveying this property to Wolfe was a trust deed.

Section 2 of art. 22 of the Constitution of Oklahoma provides:

"No corporation shall be created or licensed in this state for the purpose of buying, acquiring, trading or dealing in real estate other than real estate located in incorporated cities and towns and as additions thereto; nor shall any corporation doing business in this state buy, acquire, trade, or deal in real estate for any purpose except such as may be located in such towns and cities and as additions to such towns and cities; * * * Provided, however, that corporations shall not be precluded from taking mortgages on real estate to secure loans or debts or from acquiring title thereto upon foreclosure of such mortgages or in the collection of debts, conditioned that such corporation or corporations shall not hold such real estate for a longer period than seven years after acquiring such title."

The Bass Furniture & Carpet Company received title to the one-third interest of this land on January 9, 1917. The right to hold this land expired on January 9, 1924, more than two years before this suit was brought.

It may be contended that the land was held in trust by Wolfe. A corporation could not do indirectly what it could not do directly. It it could not be held in the name of the corporation, it could not be held in Wolfe's name as trustee.

It has been held that courts will not lend their aid to reinvest title in corporations that have no right to hold the same against the public policy of the state and contrary to the express provisions of the Constitution of Oklahoma. I believe this provision of the Constitution, prohibiting corporations from acquiring real estate out of incorporated cities, and there is no contention made that this is in an incorporated city, is one of the many wholesome provisions of the Oklahoma Constitution, and should be enforced by the courts.

The Supreme Court of the United States in Case v. Kelly, 33 L. Ed. 513, in an opinion by Mr. Justice Miller, passed on the question here presented. In Case v. Kelly, supra, the Supreme Court of United States said:

"The corporation, in order to be entitled to buy and sell, to receive and hold, the title to real estate, must have some statu-

tory authority of the state in which such lands lie, to enable it to do so."

In the instant case the corporation does not have such statutory authority, and such authority is forbidden and withheld by the provisions of the Constitution of Oklahoma. The Supreme Court of the United States further said:

"Where the plaintiff has no right to take the property, it is not injured by a decree of the court which fails to grant such right, although such property was fraudulently acquired by the defendant."

If the corporation's contention is true, its right to hold this property expired more than two years before the suit was brought, and, having no right to hold it and no right to take title, it could not be injured by a decree of this court denying it that right. In the opinion, at page 516 of 33 L. Ed., the Supreme Court of the United States said:

"The railroad company is plaintiff in this action, and is seeking to obtain the title to such lands. It has no authority by the statute to receive such title and to own such lands, and the question here is, not whether the courts would deprive it of such lands if they had been conveyed to it, but whether they will aid it to violate the law and obtain a title which it has no power to hold. We think the questions are very different ones, and that while a court might hesitate to declare the title to lands received already, and in the possession and ownership of the company, void on the principle that they had no authority to take such lands, it is very clear that it will not make itself the active agent in behalf of the company in violating the law, and enabling the company to do that which the law forbids."

Other authorities follow and announce the same rule as announced by the Supreme Court of the United States. Likewise, it was held in Chamberlain v. Chamberlain, 43 N. Y. 424, that, if a corporation claims property under a will, it must show its ability to take and power to hold the property, and an individual whose interest will be affected by the corporation accepting or holding the property, may raise the question of the corporation's ability to take or hold the property.

The same rule was followed in State, to Use of Wiltbank, v. Bates, 2 Harr. (Del.) 18; and in Proctor v. Methodist Episcopal Church South, 225 Mo. 51. It was held by that court that if the corporation was incapable of taking or holding real estate, under a will, the title would vest in the heirs.

This court, in Prince v. Gosnell, 19 Okla. 175, 92 P. 164, held that since the contract was against the public policy of the United States, it was void, and no right of action, either at law or equity, could be maintained thereon. The alleged contract is that Wolfe made an oral agreement with the Bass Furniture & Carpet Company at the time that the warranty deed was executed that he would hold the same in trust for it, the corporation, is against the public policy of the state of Oklahoma, and no right of action, either in law or equity, should be maintained thereon.

The warranty deed executed by plaintiff to defendant on the 27th day of April, 1918, is admitted to be the regular form of warranty deed.

Section 5272, C. O. S. 1921, provides:

"Every estate in land which shall be granted, conveyed, or demised by deed or will, shall be deemed an estate in fee simple and of inheritance, unless limited by express words."

Plaintiff does not contend that the deed executed here conveying this land by plaintiff to defendant, was limited by express words. This court, in the case of Oklahoma Ry. Co. v. Severns, 67 Okla. 206, 170 P. 216, in the third paragraph of the syllabus in considering this statute, said:

"* * * A voluntary grant or donation of land to a railway company vests it with an estate in fee, although the dedication was for railway purposes only."

This same statute was construed by the Circuit Court of Appeals in Gilbert v. M., K. & T. Ry. Co., 185 Fed. 102, in which the court said:

"We simply decide that, conceding the conveyance of the land in question was for railroad purposes only, still the deed that was executed for the purpose of conveying the land, when construed with reference to the laws of Oklahoma, conveyed an estate in fee."

The deed in question was a regular form of warranty deed and required by the statute of frauds to be in writing. The same conveyed a fee-simple title, and parol evidence was inadmissible to alter, vary, or contradict the terms of the same to prove that the deed was given for any other purpose than the purpose of conveying the fee-simple title.

The authorities above cited determined that the warranty deed conveyed to Wolfe fee-simple title to all the land involved. The corporation, plaintiff below, pleaded an express trust and the majority opinion finds a resulting trust. Section 8466, C. O. S. 1921, provides in part as follows:

"No such express trust shall be valid unless created, first, by a written instrument

subscribed by the grantor or grantors duly acknowledged, as conveyances of real estate are acknowledged, and recorded in the office of the county clerk of each county. * * *"

If Wolfe made an agreement to hold the land in trust for the Bass Furniture & Carpet Company, under this provision of the statute said agreement must be in writing and signed by Wolfe.

In Davidson v. Edwards, 270 S. W. 94, the Supreme Court of Arkansas said:

"It has been well said that the statute of frauds would be worse than waste paper if a breach of promise created a trust in the promisor, which the contract itself was insufficient to raise."

In Beach v. Packard, 10 Vt. 100, the court said:

"Parol evidence cannot be admitted to vary, contradict, add to, or control a deed or written contract."

Parol evidence was not admissible to vary the terms of the warranty deed by which the Bass Furniture & Carpet Company conveyed the lands in question to Wolfe.

The record does not support the finding of the majority opinion that the relation of attorney and client existed at the time the deed was made to Wolfe. In a letter written by Wolfe prior to the execution of the deed, he specifically stated that he was buying the land from them and wanted to vest title in himself. In speaking of the warranty deed from the Bass Furniture Company to himself, he says: "This will perfect the title in me."

After March 1, 1918, as a matter of law, the relation of Wolfe as attorney for the corporation terminated. That was the date on which the final judgment in the partition case was entered. As held by this court in the case of Okmulgee Northern Railway Co. v. Oklahoma Salvage & Supply Co., 133 Okla. 64, 271 P. 167, the entry of final judgment terminated the relation of the attorney to the cause.

Under this holding, the entry of the final judgment in partition terminated the relation of the attorney and client.

The firm of Wilson, Tomerlin & Buckholts were the general attorneys for the corporation on the date the deed was executed. Mr. Buckholts testified that this was a bona fide sale. At page 125 of the record, he testified as follows:

"Q. And when they sold it, they was to get the $200? A. That is what they agreed to Q. Now, out of this $200 was Wolfe to take his attorneys fees? A. I suppose he would. Q. And he would take expenses, if any? A. I assume he would do that."

Plaintiff's exhibit No. 64, page 303 of the record, reads in part as follows:

"I have just talked with Mr. Buckholts and he says that the deed was executed and has been in your hands for some time and was made out to you. It does not seem that the Bass Furniture & Carpet Company ever received the consideration of $200."

This was an admission that it was a bona fide sale and the consideration was $200.

It is contended that the making of the deed by the Bass Furniture & Carpet Company to Wolfe created the relation of attorney and client. No authorities are cited supporting this contention. For more than seven years the corporation did not pay any taxes or expenses and did not offer to pay any. Mr. Wolfe was in possession, paying all taxes and expenses and defending suits against title. The Bass Furniture Company permitted its rights, if any, to slumber, and not until there had been a change in the value of the land did it assert any claim to ownership in the real estate.

The cases cited in the majority opinion holding that, where the attorney acquires the subject of litigation, he holds it in trust for his client, are not in point. In the case at bar the attorney in the utmost good faith took title to this property in his client's name. Had Wolfe taken title in the foreclosure suit in his name, this law would apply, or had he taken title in the partition suit in his name, the authorities cited would apply, but the record in this case shows that he did not do so. The title was taken in his client, the Bass Furniture & Carpet Company, a corporation, and after that title was acquired for the Bass Furniture & Carpet Company and the sheriff's deed was confirmed by the court, upon advice of counsel, without fraud or misrepresentation on the part of Mr. Wolfe, the Bass Furniture & Carpet Company, by warranty deed, conveyed the property to Wolfe. So the authorities cited do not apply in the instant case. The facts do not bring this case within the rule announced in those authorities.

For the reasons herein stated, the Bass Furniture & Carpet Company is not entitled to judgment and decree of this court, and, on the contrary, judgment should be entered reversing this cause, with directions to the trial court to enter its decree quieting title in C. Dale Wolfe.