Warren W. THOMAS, Appellant,

v.

OKLAHOMA NATURAL GAS COMPANY, a corporation, and Oklahoma Natural Development Corporation, a corporation, Appellees.

No. 46818.

Court of Appeals of Oklahoma, Division No. 1.

Sept. 24, 1974.

Released for Publication by Order of Court of Appeals Oct. 24, 1974.

Loeffler & Allen, by David H. Loeffler, Jr., and Mitchell E. Shamas, Tulsa, for appellant.

Huffman, Arrington, Scheurich & Kihle, by John M. Arrington, Jr., and John M. Sharp, Tulsa, for appellees.

ROMANG, Judge:

The appellant, Warren W. Thomas, who was the plaintiff below, will herein be styled the plaintiff. The appellees, Oklahoma Natural Gas Company, and Oklahoma Natural Development Corporation, who were the defendants below, will herein be styled defendants when the reference is to both; when the reference is to a particular defendant, O.N.G. will refer to Oklahoma Natural Gas Company, and Development will refer to Oklahoma Natural Development Corporation.

The plaintiff alleged that on April 11, 1973, O.N.G., acting through its wholly owned subsidiary, Development, entered the high bid of $1,040,000 for certain Oklahoma land, at a sheriff's sale held for partition of land, and that plaintiff's bid of $1,035,000 was the second highest bid.

Urging that O.N.G. did not need the above land for the transaction and operation of its business as a public service corporation, plaintiff alleged that O.N.G. was prohibited by Sec. 2 of Art. 22 of the Oklahoma Constitution, from acquiring such land, and therefore that its subsidiary, Development, was similarly not entitled to acquire said land, because it was doing so solely as part of a fraudulent device by which O.N.G. could have the benefit of such land holding. Accordingly, plaintiff sought to enjoin the defendants, and each of them, from taking title to such land.

As a second cause of action plaintiff stated that it would pay the same price bid by O.N.G., and that, if no injunction were

granted whereby plaintiff could become the purchaser, then plaintiff had been damaged (by loss of potential profits from development of said land) and sought actual and punitive damages against both defendants. The defendants' demurrers, asserting lack of standing by the plaintiff to maintain an action and also that plaintiff failed to state a cause of action, were sustained by the trial court. Plaintiff having declined to amend further, the court dismissed the action. Plaintiff appealed.

█ The pivotal question presented is the meaning and effect of Sec. 2 of Art. 22 of the Oklahoma Constitution. This Section, set out below as it reads today, is slightly different than when the Constitution was originally enacted, because in 1953 the people by referendum, added the amendments indicated in italics, which amendments have no importance in the present controversy:

"No corporation shall be created or licensed in this State for the purpose of buying, acquiring, trading, or dealing in real estate other than real estate located in incorporated cities and towns and as additions thereto; nor shall any corporation doing business in this State buy, acquire, trade, or deal in real estate for any purpose except such as may be located in such towns and cities and as additions to such towns and cities, and further except such as shall be necessary and proper for carrying on the business for which is was chartered or licensed; *and provided further that under limitations prescribed by the legislature, any corporation may acquire real estate for lease or sale to any other corporation, if such latter corporation could have legally acquired the same in the first instance;* nor shall any corporation be created or licensed to do business in this State for the purpose of acting as agent in buying and selling *or leasing* land *for agricultural purposes; p*rovided, *however, t*hat corporations shall not be precluded from taking mortgages on real estate to secure loans or debts, or from acquiring title thereto upon foreclosure of such mortgages or in the collection of debts, conditioned that such corporation or corporations shall not hold such real estate for a longer period than seven (7) years after acquiring such title: *and provided, fur*ther, *t*hat this Section shall not apply to trust companies taking only the naked title to real estate in this State as a trustee, to *be held solely as security for indebtedness pursuant to such trust; and provided, further, t*hat no public service corporation shall hold any land, or the title thereof, in any way whatever in this State, except as the same shall be necessary for the transaction and operation of its business as such public service corporation."

Is Sec. 2 self-executing? A number of decisions holding portions there involved were not self-executing, did not mention the final provision on public service corporations. The plaintiff quotes French v. Ayres, 201 Okl. 494, 497, 207 P.2d 308, 311 (1940): "This provision has been held to be separate, independent, and distinct from the other prohibitions and exceptions preceding it."

*French,* however, involved the question of whether a public service corporation (specifically, an oil pipe-line company, through whom one litigant claimed àgainst the condemnee's successors) was entitled to acquire by eminent domain the whole fee to land when its purposes required only that it have the right to use the same for pipe-line purposes until it abandoned its pipe-line. As land acquired by eminent domain is taken from the grantor without the need of his consent, such eminent domain proceeding cannot wrest from him more than the law permits the condemnor to acquire. *French,* in stating that the proviso concerning public service corporations "has been held to be separate, independent, and distinct from the other prohibitions and exceptions preceding it," relied on Oklahoma Natural Gas Co. v. State ex rel. Vassar, County Attorney, 187 Okl. 164, 101 P.2d 793 (1940) (hereinafter cited as *Vassar*) and Texas Co. v. State ex rel. Coryell, County Attorney, 198 Okl. 565, 180 P.2d 631 (1947) (hereinafter cited as *Coryell*).

In *Vassar*, the county attorney instituted escheat proceedings against a public service corporation as to a vacant city lot owned by said corporation and not necessary for transaction and operation of its business as such public service corporation. The company had urged that Sec. 2's final proviso had no application to city lots but applied only to rural land, relying on earlier provisions of the section. In stating that the final proviso was independent, *Vassar* held that the earlier provisions which either allowed corporations to do certain things as to city realty, or specifically forbade them acting as an agent in buying or selling land, did not confine the final proviso to rural land. This did not declare, or imply, that the final proviso should be treated as self-executing. Moreover, in *Vassar* the proceeding was brought by the county attorney, not by a purely private citizen. Also, the proceeding was one seeking to cause the title to be escheated. The decision did not deny that the corporation had acquired a title; to have so denied the acquisition of title might have left the title in the grantor. *Vassar* was subsequently cited in *Coryell* (which the plaintiff cites as "Texas Co. v. State"), which was also an escheat proceeding brought in the name of the State on relation of a county attorney. In *Coryell* the trial court had held that "as applied to such corporations as defendant" (Texas Company, authorized by its charter to produce, store, transport, refine, purchase and sell mineral products and oil and gas), Sec. 2 of Art. 22 "prohibit[ed] corporate ownership of land or real estate outside of incorporated cities and towns and additions thereto." In reversing this holding as error, *Coryell* clearly states that the section deals with different types of corporations. One type, land companies, has no right to deal in realty other than that located in incorporated cities and towns and additions thereto, but "corporations in general, such as typified by the defendant corporation, it is not denied ownership of rural real estate, but is limited . . . [to] such real estate 'as shall be necessary and proper for carrying on the business for which it was chartered or licensed.'" Moreover, *Coryell* cited *Vassar* as having "setting out the prohibition and exceptions, and clearly recognized that each of the latter was separate and independent of the former and not mere restrictions or limitations upon the initial prohibition." *Coryell* also held that "the provisions of Sec. 2 . . . are not self-executing, and . . . the jurisdiction of the court to declare an escheat must depend upon the statutory enactment therefor." 180 P. at 635. Thus, *Vassar* held that the final proviso applied to city lots as against a contention that it applied only to rural land, and *Coryell* held that Sec. 2's restrictions on landholding did not limit general corporations to owning land within city or town limits. The foregoing is fatal to the notion that although Sec. 2 in general is not self-executing the final proviso thereof is self-executing.

Also persuasive is Wolfe v. State ex rel. Presson, 163 Okl. 180, 21 P.2d 1067 (1933) in which a furniture corporation had, in the regular course of its business, obtained certain realty through foreclosure of a real estate mortgage and had immediately transferred it to one Wolfe under an agreement that he would sell the land for the corporation's benefit. Wolfe failed to sell it and later claimed it himself. Nine years after conveying to Wolfe, the corporation sued to establish the trust, the trial court so holding and the Supreme Court modifying the judgment but upholding it as to the land interest later sought to be escheated. Wolfe v. Bass Furniture & Carpet Company, 152 Okl. 125, 3 P.2d 895 (1930). After the action of the latter court, the county attorney instituted an escheat proceeding against both the corporation and Wolfe, Wolfe also cross-petitioning. The trial court judgment in favor of the corporation, appealed from both by Wolfe and by the State, was affirmed. The corporation's interest in the land having continued for more than the seven years permitted by Sec. 2, Art. 22, of the Constitution, the court had before it a retention allegedly violating the Constitution, not merely being *ultra vires*. Although noting that the ex-

cessive retention of an interest by the corporation resulted by Wolfe's breach of trust, the court declared that the policy of the Oklahoma courts did not favor escheats and that a holding of real estate by a corporation in violation of the governing law, while a cause or ground of escheat if so provided by the legislature, did not ipso facto effect an escheat. The denial of escheat was accordingly affirmed.

■ Conceding that Oklahoma decisions had declared that a corporation's acquisition and holding of realty in excess of that allowed by Sec. 2 of Art. 22 could be questioned only by the State, the plaintiff sought to distinguish those cases as not involving public service corporations, and to construe such Sec. 2 as making illegal in the case of public service corporations violations of the section which were merely ultra vires when involving other types of corporations. There is nothing in said Sec. 2, nor in the reported cases, to support such a distinction.

A few cases have permitted an individual to raise the question of whether a corporation can acquire land in violation of Sec. 2, but they cannot be construed as broad enough to give standing to this plaintiff. In *French* the individual was a landowner from whom an oil corporation had taken by eminent domain the right to use his land for pipeline purposes, and the question was simply how much of an interest the condemnor was entitled to take against the condemnee's will.

Simler v. Wilson, 210 F.2d 99 (10th Cir. 1953), cert. den. 347 U.S. 954, 74 S.Ct. 681, 98 L.Ed. 1099 (1954), held that where a testatrix (dying in 1952) had devised Oklahoma realty to a corporation which was forbidden by the Constitution and statutes from acquiring or owning it (the land devised being rural land, not within any city or town, and also not being necessary and proper for carrying on the corporation's business), her sole heir was entitled to have the devise held void, notwithstanding the general Oklahoma rule that validity of a forbidden conveyance to a corporation could be questioned only by the State.

Whether or not this decision properly stated the Oklahoma law, there is an obvious difference between the sole heir of the testatrix whose devise thus violated the law, and the present plaintiff who was simply outbid at the sale.

Johnstone v. Patterson, 418 P.2d 656 (Okl.1966), after discussing, distinguishing and inferentially questioning *Simler*, affirmed a judgment quieting title in the grantee of a benevolent corporation-devisee of rural Oklahoma land, and held that Sec. 2 of Art. 22 of the Oklahoma Constitution made no distinction between real estate acquired by deed or by will, and was not self-executing. As the testator died in 1914 the statutory law of that time applied but neither the statutes then or thereafter in force required or permitted a different interpretation of that section of the Oklahoma Constitution.

The second section of the 1908 escheat statute began "In all cases where, by reason . . . section two, article twenty-two of the Constitution of this state, the title to any real property in the state *shall fail to vest* in the grantee under any deed, bond, contract, or will, or other instrument . . ., or shall fail to vest . . . under any law of inheritance . . ." (L.1907–1908, Ch. 32 § 2, Emphasis supplied), but this phraseology was dropped in an act approved March 31, 1919, the latter beginning, "The taking, holding or transferring of land in contravention of Section 2, Article 22, of the [Oklahoma Constitution] is hereby declared illegal and unlawful . . . and subject to escheat . . ." As thus amended it was C.O.S. 1921 § 11321 and O.S.1931 § 1636, but was repealed in 1937 (L.1937, p. 317 § 14) before the decisions in *Vassar, Coryell, French*, and *Simler*. Similarly, the former provision, O.S.1931 § 9751, directing the county attorney to proceed against corporations failing to dispose of surplus realty, the court thereupon having to determine the facts and proceed against the property as in case of escheat, was also repealed in 1937 (L.1937, p. 317 § 14). See also, further repeals by Laws, 1947, p. 188 § 248, in the Business Corporation Act, now 18 O.S.

1971, Ch. A (and, particularly, §§ 1.20–1.-25).

The repeal of the escheat sections could not make self-executing a section of the Constitution which was held not to be self-executing when such escheat sections existed.

Affirmed.

BOX, P. J., concurs.