## WATTS v. JACKSON.

No. 7338—Opinion Filed July 1, 1919.

(Syllabus by the Court.)

**1. Attorney and Client—Purchase of Client's Property—Validity—Burden of Proof.**

Although an attorney is not under an absolute disability to purchase his client's property, where he does so during the existence of the relation of attorney and client with respect to the property so purchased, he assumes the heavy burden of proving his utmost good faith and fairness in the transaction and that he paid an adequate consideration for the property. He must also show that he fully informed his client of all the material facts and gave the same disinterested advice he would have given had the sale been made to a stranger.

**2. Same—Sufficiency of Evidence.**

Evidence in the case examined, and held, to show that the attorney discharged the heavy burden resting upon him, and that his purchase was valid.

Error from District Court, Wagoner County; Jesse M. Hatchett, Assigned Judge.

Action by Bethena Jackson, nee Colbert, against Charles G. Watts. Judgment for plaintiff, and defendant brings error. Reversed.

Thos. H. Owen, A. L. Harris, and Alvin F. Molony, for plaintiff in error.

Malcolm E. Rosser and H. L. Armstrong, for defendant in error.

RAINEY, J. This case involves the purchase by the plaintiff in error, Charles G. Watts, of a tract of land belonging to the estate of Bethena Jackson, defendant in error, a Creek freedman minor, at the confirmation of a guardianship sale while the alleged relationship of attorney and client existed between the parties.

At the threshold of the case, we must determine the rule of law applicable to such transactions. There are a few cases holding that an attorney is under an absolute disability to purchase the subject-matter of his retainer or pending or prospective litigation

of his client; but the weight of authority is that such purchases are not absolutely void, but will only be upheld in cases where the purchase is made in the utmost good faith and fairness for an adequate consideration, and where it is shown that the attorney fully informed his client of all the material facts and gave the same disinterested advice he would have given had the sale been made to a stranger. 2 Ruling Case Law, sec. 48; 6 Corpus Juris, p. 684, sec. 209, and cases cited in note to Crocheron v. Savage, 23 L. R. A. (N. S.) 679.

The correct rule, we think, is well stated by the Supreme Court of Wisconsin in Young v. Murphy, 120 Wis. 49, 97 N. W. 496, as follows:

"If an attorney purchase his client's property, concerning which his advice is sought, the transaction is always viewed with suspicion, and the attorney assumes the heavy burden of proving, not only that there was no overreaching of the client, but that the client acted upon the fullest information and advice as to his rights. In other words, the attorney must prove uberrima fides, or the transaction will be set aside by a court of equity."

The rule is not peculiarly applicable to cases of attorney and client, but is one governing all 'cases where a fiduciary relationship exists, and has been very clearly expressed in the case of Daniel v. Tolon, 53 Okla. 666, 157 Pac. 756, wherein this court, in an opinion by Mr. Justice Sharp, said:

"While equity does not deny the possibility of valid transactions between parties, where a fiduciary relationship exists, yet because every such relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption. The broad principle on which the court acts in cases of this description is that 'wherever there exists such a confidence, of whatever character that confidence may be, as enables the person in whom confidence or trust is reposed to exert influence over the person trusting him, the court will not allow any transaction between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the breast of the one who seeks to establish a contract with the person so trusting him. Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influences exerted to obtain an advantage at the expense of the confiding party, the person so

availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed. Tate v. Williamson, L. R. 1 Eq. 536; Tate v. Williamson, L. R. 2 Ch. 55, 60; Rhodes v. Bate, L. R. 1 Ch. 252, 257. The principle announced and its effect upon the rights and liabilities of the parties thereto extends to transactions between a trustee and a beneficiary, principal and agent, attorney and client, guardian and ward, parent and child, as well as to other relations."

Measured by this high standard, there are few purchases of property by an attorney from his client that will be upheld; but, after careful consideration, we have decided that the plaintiff in error has discharged the heavy burden resting upon him, and that the sale in the instant case was valid.

It appears from the findings of the trial court and from the evidence adduced at the trial that the plaintiff in error, Charles G. Watts, then a practicing attorney (now one of the district judges of the Third judicial district of this state), was employed by the defendant . in error, Bethena Jackson, nee Colbert, a married woman, but who lacked a few months of arriving at her majority, according to the Creek freedman rolls, her father, and J. S. Parker, her friend, to protest at the confirmation of a guardian's sale of her land which had been ordered by the county court upon petition filed by her guardian, S. B. Barnett. The sale had been duly advertised, bids were in, and the sale was ready for confirmation on the 30th day of December, 1911. Judge Watts was not the attorney for the guardian in the sale proceedings. He explained to his clients the difficulty in defeating the confirmation, due to the fact that the court had already adjudged the necessity of the sale at the time of entering the decree of sale; but he agreed to do all he could to prevent its confirmation, and, accordingly, on the date set, did, as attorney for the plaintiff and her father, file with the county court a written protest against the confirmation of said sale, and appeared in court and made an argument in their behalf opposing the confirmation. The objections to the confirmation were overruled by the court, whereupon Judge Watts privately consulted with his clients and explained to them that they could appeal from the decision of the county court overruling the protest to the district court by giving the proper bond. They then informed him that they were unable to appeal, and, after having been advised that they would not appeal, he suggested that he could go before the court and by raising the bid, as authorized by section 6386, Rev. Laws 1910, make the land bring

all that he could. They approved of this procedure and stated that if he could. make it bring as much as $5,000 they believed that they had just as well sell it. Judge Watts accordingly went into court, and after bidding back and forth with two or three other bidders finally purchased the land at $5,030, which was $700 in excess of the original bid. After the sale, he offered to convey the land to his clients for the amount of his bid. The trial court found that at the time of the purchase Judge Watts was attorney for the plaintiff and her father in protesting, before the county court the confirmation of the sale, and:

"That he purchased said real estate after the protest was overruled in his own name, that there is nothing in the evidence which shows any corrupt or wrongful motive on the part of the defendant Watts, but, on the other hand, the evidence shows that he was acting in the interest of his clients, and that his only purpose after the protest was overruled was to see that the land sold for as much as could possibly be obtained for it, and it did actually sell for a considerable sum in excess of the amount bid at the original sale. The part of the defendant, Watts, but, on the other did not want to purchase the land for himself, and that after he had made his final bid and the sale was confirmed to him he informed the plaintiff and her father that he still did not want the land and would like for them, if they could, to arrange to take it off his hands at the same price, and they informed him that they were unable to do so because they could not raise the money. There is a charge in the petition of a conspiracy among persons named therein to defraud the minor out of her land and the proceeds; but I find there is no evidence of conspiracy, and, in addition to that finding, it was several times stated by eminent counsel for the plaintiff, during the trial and during the argument, that there was no evidence of conspiracy, and that so far as that was concerned they withdrew it at the beginning of the trial. This court believes that the defendant, Watts, went further for the protection of his clients than he was required to go under the terms of his employment, and further than most attorneys would have felt called upon to go under the same circumstances, and there is no reflection in any wise in the evidence, upon his integrity."

The findings of fact of the trial court are amply supported by the evidence, and no objections were filed thereto by the defendant in error. The court refused to cancel the guardian's deed and to set aside the title held by purchasers with notice of the facts or charged with notice thereof, but concluded that on account of the relation existing between the parties Judge Watts should account to the plaintiff for the small amount of profit, to wit, $490, he thereafter made on the sale of the land. We agree with the trial court in every respect except as to the judgment rendered. If, measured by the high standard announced by this and other courts, the sale was valid, as we have found it was, Judge Watts was entitled to the small profit he made on the land, and it was error for the court to render a money judgment against him.

There is one other matter which probably should be noticed in this opinion: Judge Watts lacked $400 of paying the full amount of his bid; but under the sale he was to have the immediate possession of the property, and it developed that the land was in the hands of a lessee, and Judge Watts did not get possession of the land or of the rents. On the contrary, the lessee paid the rents for the year of the purchase, in the sum of $550, to the guardian, and by agreement with the court $400 was deducted from Judge Watts' bid. We think this is immaterial, for he would have gained by paying the full amount of his bid and accepting the rents.

From an examination of the record we are convinced that Judge Watts acted in every way in the utmost good faith and for the protection of his clients.

The judgment of the trial court is therefore reversed.

All the Justices concur, except OWEN, C. J., disqualified and not participating.