## MINTON et al. v. ROBERTS.

No. 16547—Opinion Filed May 4, 1926.

Rehearing Denied June 29, 1926.

1. **Attorney and Client—Purchase of Client's Property—Good Faith.**

The rule against purchases by an attorney is not inexorable, and such a purchase may be valid when the attorney can show satisfactorily that he has purchased for himself with his client's consent, and that the transaction was in every way fair and not to his client's disadvantage.

2. **Same—Validity of Purchase at Judicial Sale.**

A transaction between an attorney and his clients examined, and held, to show that the attorney discharged the burden resting upon him and that his purchase at a judicial sale was valid.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Osage County ; Jesse J. Worten, Judge.

Action by L. F. Roberts against L. E. Minton et al. Judgment for plaintiff, and defendants bring error. Affirmed.

Grinstead, Scott, Hamilton & Gross, for plaintiffs in error.

Preston A. Shinn and L. F. Roberts, for defendant in error.

Opinion by PINKHAM, C. The defendant in error, L. F. Roberts, was plaintiff, and the plaintiffs in error, L. E. Minton, Lucy N. Button, Carrie C. Hewitt, and C. D. Nellis, were defendants, in the trial court. The parties will be referred to as they appeared in the lower court.

This suit involves the title to certain described lots in the city of Pawhuska. The property involved in this action, and other property, was involved in the suit of Minton v. Button et al., which suit was tried in the district court of Osage county during the year 1922, and was appealed to this court

by the defendants Lucy N. Button, Carrie C. Hewitt, C. D. Nellis, and H. O. Nellis, and was decided in this court on the 12th day of June, 1923 (Nellis et al. v. Minton, 91 Okla. 75, 216 Pac. 147).

In that case the defendant L. E. Minton was, by mandate of this court, decreed to have a lien upon the undivided one-half interest of the property owned by Lucy N. Button, Carrie C. Hewitt, C. D. Nellis, and H. O. Nellis. The plaintiff, L. F. Roberts, was the attorney for Lucy N. Button and others above named, under a written contract which provided as follows:

"Whereas E. P. Nellis, deceased, died owning certain rights in numerous lots in Palmer Highland addition to the city of Pawhuska, and whereas said interest is now in litigation; these presents are therefore to witness that we, Lucy N. Button, Carrie C. Hewitt, H. O. Nellis, and C. D. Nellis, heirs at law of the said E. P. Nellis, deceased, desire to employ counsel to represent them in the litigation now pending, or that may hereafter be pending, affecting their interest in said property, agree with L. F. Roberts, attorney at law, of Pawhuska, Okla., that he is to represent them in said litigation,—advance whatever expense is necessary therein, and shall have for fee compensation therefor, one-half interest of all he may recover or save for said heirs. It being understood by the parties hereto that in the event the said litigation is successfully concluded, L. F. Roberts is to be reimbursed for any taxes he may be compelled to pay to protect the title in said property and interest thereon at the rate of 18 per cent. per annum, and that he is to be reimbursed for any necessary expense he may incur in said litigation. * * * That in the event said litigation is unsuccessful, that no liabilites are incurred by the heirs of E. P. Nellis, deceased."

The case of Minton v. Button et al. was remanded to the district court of Osage county, and by proper order of the court the property involved herein was advertised for sale to satisfy the judgment rendered. The defendants in that action were to receive all of the proceeds from said sale in excess of the judgment in favor of L. E. Minton and the costs.

On the day of the sale, September 10, 1923, the plaintiff, L. F. Roberts, appeared and in his own name purchased a part of the property involved in this action. The property sold for less than the amount due on said judgment.

It appears that Lucy N. Button was administratrix of her father's estate, and acted as the agent and representative of the other heirs, and that just previous to the

sale and after the order of sale was made, the plaintiff, Roberts, wrote Mrs. Button that the property was to be sold, and that she replied that neither she nor her brothers nor her sister would put any money in the property, and requested him to have someone bid it up so that it would bring more than the lien. After Mr. Roberts received that letter from Mrs. Button, he filed a motion in the district court of Osage county, asking that the property be sold in lots of 50 each.

It appears that the plaintiff had fully advertised the property for sale, giving the time and place; that he went to a number of real estate men and prospective buyers, and requested them to go to the sale and bid on the property, and that as a result of his efforts a number of bidders were present at the sale, and there is no contention that the lots were not fairly sold.

There is evidence in the record that subsequent to the sale, Mr. Roberts at once notified his clients that the property brought less than the amount of the lien. It appears that Mr. Roberts purchased at this sale an undivided one-half interest in lots 21 and 22 in block 22, and afterward purchased a number of other lots from one T. C. Graham, who was the highest bidder for the lots referred to, and paid him the sum of $2,945, and proceeded to partition the same on October 10, 1923.

An order was made approving the report of the commissioners at this partition proceeding, which awarded certain lots to the defendant L. E. Minton, and to the plaintiff, L. F. Roberts. This award was agreed to by both parties, and the order confirming the report of the commissioners was approved by counsel for the defendant Minton.

It further appears that, previous to the time of the partition proceeding, although the Nellis heirs owned an undivided one-half interest in lots 9, 10, 11, and 12 in block 43, the defendant Minton had given a warranty deed to the said lots to the city of Pawhuska, and had been paid therefor, and thereafter it became necessary for the plaintiff, Roberts, to partition the same with the city of Pawhuska, which he did, and purchased the city's undivided one-half interest for the sum of $1,500.

While the partition suits were pending, and before the plaintiff, Roberts, had any knowledge of the fact, the defendant Minton procured from the Nellis heirs a quitclaim deed dated March 24, 1924, conveying their interest in and to the property involved in this action to the defendant L. E. Minton.

The record discloses that after Mr. Minton procured this quitclaim deed, he made the Nellis heirs parties defendant in his answer and. cross-petition in the present case, without their knowledge or consent. This quitclaim deed was not placed of record until after the partition suits referred to had been completed, and until after the plaintiff, Roberts, had paid the city of Pawhuska for the undivided one-half interest in the said property acquired by the city of Pawhuska from Mr. Minton. When Minton placed this quitclaim deed of record, the plaintiff, Roberts, then filed this suit to quiet title to this property and have this deed declared void, and procured judgment to that effect in the trial court.

The defendant L. E. Minton tendered into court for the use and benefit of the plaintiff, Roberts, $2,945, the amount Mr. Minton claims the plaintiff paid the sheriff at said judicial sale and the sum paid by the plaintiff as taxes on the property in question. The evidence shows that the plaintiff, Roberts, during a period of some five years that he represented the Nellis heirs, during which time two cases in which their interests were involved were appealed to this court. had never received any compensation whatever, and had borne all of the expenses incident to the litigation. He testified that the total amount of money expended by him, including the purchase of the lots in. question, amounted to more than $5,000.

Plaintiffs in error have duly appealed, and for reversal of the judgment, submit the following propositions:

" (1) That the plaintiff was the attorney for the defendants Lucy N. Button, Carrie C. Hewitt, C. D. Nellis, and H. O. Nellis, when the judicial sale was conducted. When he purchased the property involved in that litigation, he became a trustee for his clients, and when the sheriff's deed was executed to him he held only the legal title. His clients were the owners of the equitable title, and were entitled, on payment to him of the amount which he had paid, to have the property conveyed to them by him. (2) His clients, the beneficiaries of the trust estate, could convey their equitable interest, and when they did convey same to the defendant L. E. Minton, the said defendant L. E. Minton had a right to enforce a conveyance of plaintiff's legal title to him."

Numerous authorities are cited in the brief of defendants, all of which are to the effect that as a general rule. an attorney can, in no case, without the client's consent, buy or hold otherwise than in trust any adverse title or interest touching the things to which his employment relates.

As was said in the case of Baker v. Humphrey, 101 U. S. 494, 25 L. Ed. 1065, cited by counsel for defendants:

"He cannot in such a way put himself in an adversary position without this result. The cases to this effect are very numerous, and they are all in harmony."

The rule to be deduced from the cases upon this question is stated in 6 C. J. 684, as follows:

"The rule against purchases by an attorney is not inexorable, and such a purchase may be valid where the attorney can show satisfactorily that he has purchased for himself with his client's consent, and that the transaction was in every way fair and not to his client's disadvantage."

[In the case of Pacific Railroad v. Ketchum, 101 U. S. 289, the court said:

"We are called upon to decide whether a purchase in the name of the solicitor of one whose property is sold is necessarily in and of itself invalid. We think it is not. It will be scrutinized closely, but until impeached must stand. Slight circumstances may impeach it, but it is not under all crcumstances invalid."

In the case of Ewing v. Parrish (St. Louis Court of Appeal, Mo.) 128 S. W. 538, it is held that:

"Where the administrator and heirs decided not to bid on land sold under a first trust deed, in order to protect a second trust deed held by the estate, an attorney for the administrator could buy the land for his own benefit."

In the case of Hess v. Vose, 52 Ill. 472, the court said:

"There is no rule of law which prohibits an attorney in a cause from becoming a purchaser at the master's sale under the decree therein, even of land belonging to his client; though in such case his conduct will be closely scrutinized, and if he has not acted with strict fairness the purchase will be held to have been made for his client."

This court, in the case of Watts v. Jackson, 75 Okla. 123, 182 Pac. 508, has followed the rule announced in the above-cited cases as follows:

"Although an attorney is not under an absolute disability to purchase his client's property, where he does so during the existence of the relation of attorney and client with respect to the property so purchased, he assumes the heavy burden of proving his utmost good faith and fairness in the transaction, and that he paid an adequate consideration for the property. He must also show that he fully informed his client of all the material facts and gave the same disinter-

ested advice he would have given had the sale been made to a stranger."

In this case it was held that the attorney discharged the burden resting upon him, and that his purchase was valid.

See, also, Daniel v. Tolon, 53 Okla. 666, 157 Pac. 756, wherein this court in an opinion by Mr. Justice Sharp said in part:

"While equity does not deny the possibility of valid transactions between parties, where a fiduciary relationship exists, yet because every such relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises presumption against its validity, and casts upon that party the burden of proving affirmatively his compliance with equitable requisites and of thereby overcoming the presumption.""

It is urged that these lots, or some of them, were purchased by the plaintiff without the consent of the Nellis heirs, and that Mrs. Button so stated in her deposition, which is incorporated in the record. It is true that she stated in her deposition, taken by the defendant Minton, that she did not give her consent to the purchase of any part of this property by Mr. Roberts, but it is also true that in the same deposition she stated on cross-examination that in September, 1923, the plaintiff wrote her a letter telling her that these lots were going to be sold. She further stated that none of the heirs were willing to put any money in the property, and that she wrote the plaintiff to have some one at the sale to bid on the lots so that the heirs would be protected, and further that she received a letter from the plaintiff containing the order of sale, and informing her that the property had been purchased for less than the lien. She further stated that the plaintiff did not hold the property in trust for her or for her brothers and sister.

We are led to the conclusion, from an examination of the record in this case, that the Nellis heirs, who were made parties by the answer and cross-petition of defendant Minton, without their knowledge or consent, had resolved to make no efforts themselves to bid on the lots in question, but to allow them to be sold to the highest bidder; that they so instructed the plaintiff. There were many bidders at the sale, among whom was the defendant Minton, who bid on some of the lots, and the plaintiff, who was the highest bidder for a few lots, and who afterward purchased other lots from one who had purchased at the sale, and it is difficult to see how the Nellis heirs were in any way injured, or any advantage taken of them. If the plaintiff had not bid on the lots awarded to him, they would have passed to some other purchaser at presumably a less price, in which event the title would have been unquestionable.

It is earnestly contended by counsel for defendants, that the plaintiff, being the attorney for the Nellis heirs, could not purchase at the sale any of these lots, and that he did not purchase in good faith. Defendants say in their brief:

"It is not necessary to impute any wrong motive to Mr. Roberts, the plaintiff, or to accuse him of actual fraud. The rule is not founded upon wrongdoing or fraud, but it is founded upon public policy, and is a rule of prevention rather than a rule of cure."

So far as the question of good faith is concerned, the evidence amply supports the trial court's conclusions in favor of the plaintiff.

The disability of the attorney arises when some duty or obligation to his client is involved; and the courts are strict in enforcing a rigid adherence to such duty and a recognition of such obligations.

The facts in this case fail to disclose any violations of duty, or any such transaction as would bring it within the condemnation of the law.

Having concluded, from a careful examination of the entire record, that the plaintiff, in bidding on the lots in question, did so with his clients' consent, and that no advantage was taken of them, it follows that the quitclaim deed procured by the defendant L. E. Minton, and kept by him from the record until the completion of the partition suit, to which he was a party and to which he consented, the finding of the trial court, that the said quitclaim deed given by the Nellis heirs to the defendant L. E. Minton is void as to the lots involved in this action, is amply supported by the evidence, and we think the judgment of the court that the title of the plaintiff, L. F. Roberts, in and to said real estate be quieted in him as against the defendants should be affirmed.

By the Court: It is so ordered.

Note.—See 6 C. J. p. 684 §209; anno. 23 L. R. A. (N. S.) 679; 28 L. R. A. (N. S.) 723; 2 R. C. L. Supp. p. 967; 1 R. C. L. Supp. p. 669; 5 R. C. L. Supp. p. 119.