## HARRISON et al. v. REED et al.

No. 20455. Opinion Filed Nov. 10, 1931.

Rehearing Denied Jan. 12, 1932.

Lewis E. Neff and William Neff, for plaintiffs in error.

R. J. Roberts and Orr & Woodford, for defendants in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Seminole county in favor of the defendants in error, defendants in that court, against the plaintiffs in error, plaintiffs in that court. The parties hereinafter will be referred to as plaintiffs and defendants.

The record shows the facts hereinafter

stated. One Lucinda died intestate in 1916 and her allotment descended as follows: One-third to her husband and two-thirds to her three minor children. Those children are the plaintiffs in this case. Willie Harrison, the father of the three minors, was appointed guardian of their persons and estates. Ray W. Reed was attorney for the guardian. The guardian executed a deed of interests of the minors in the land in question to W. C. Bunyard, the consideration being $400. That deed was placed of record. W. C. Bunyard took the title thereto in trust for Ray W. Reed, attorney for the guardian, on the date of the sale. Thereafter one Katie Davis was appointed guardian of the minors, and on April 7, 1920, she executed a guardian's deed of the interests of the minors in the land to Eulahmae Reed, who was the wife of Ray W. Reed. Thereafter W. C. Bunyard executed a deed to the land to Eulahmae Reed.

The minors brought suit in the district court of Seminole county in ejectment and to quiet the title to the real estate as against the claims of Eulahmae Reed and certain persons holding conveyances from her. The cause was tried to the court and judgment was rendered in favor of the defendants and against the plaintiffs. At the conclusion of the trial, the court said:

"It is unnecessary to pass upon the validity of the first deed, as the second guardianship sale seems to be in all respects regular, conveying whatever interest the minors had in the property at the time the deed was signed, executed, and delivered and confirmed."

The plaintiffs contend:

"The guardian's deed of June 1, 1917, was void for the reason that it was secretly taken in the name of W. C. Bunyard for the use and benefit of Ray W. Reed, who was the attorney conducting the sale."

The fact that Ray W. Reed, attorney for the guardian, did not take the title to the land in his own name and that he took title in the name of W. C. Bunyard, must be considered by this court. The recording of the deed to W. C. Bunyard, under the probate record shown herein, placed the recorded legal title to the land in W. C. Bunyard. There it remained at the time of the second guardian's sale. It is unnecessary for this court to determine whether that deed was void, as contended by the plaintiffs, or voidable.

The recorded legal title was in W. C. Bunyard at the time of the second guardian's sale.

In Watts v. Jackson, 75 Okla. 123, 182 P. 508, it was held:

"Although an attorney is not under an absolute disability to purchase his client's property, where he does so during the existence of the relation of attorney and client with respect to the property so purchased, he assumes the heavy burden of proving his utmost good faith and fairness in the transaction and that he paid an adequate consideration for the property. He must also show that he fully informed his client of all the material facts and gave the same disinterested advice he would have given had the sale been made to a stranger."

We cite that holding as applicable herein on the question of the burden of proof. Under the state of the record, it was incumbent upon the defendants herein to produce evidence of good faith and fairness in the transaction culminating in the execution of the guardian's deed to W. C. Bunyard. There is nothing in the record to show a compliance with that rule on the part of any of the defendants.

The defendants cite the case of Minton v. Roberts, 119 Okla. 32, 247 P. 662, in which it was held:

"The rule against purchases by an attorney is not inexorable, and such a purchase may be valid when the attorney can show satisfactorily that he has purchased for himself with his client's consent, and that the transaction was in every way fair and not to his client's disadvantage"

—but they make no explanation of their failure to introduce evidence in conformity with the rule therein stated.

The plaintiffs contend that "Only $250 of the pretended purchase price of $400 was paid."

The record shows the testimony of Katie Davis, the guardian who made the second sale, in which she was asked and answered:

"Q. How much money did you receive on the execution of the guardian's deed in this case? A. I didn't get any. $250. Q. $250? A. Yes, sir."

That testimony supports the contention of the plaintiffs. The answer of the defendants thereto is:

"This, in our judgment, makes her testimony unreliable because she first denied receiving any money and then follows it with an admission of the receipt of $250 of the $400 purchase price. The order of confirmation recites the $400 consideration, cash upon confirmation and delivery of deed to said land. The deed was recorded and therefore must have been delivered."

While the testimony may be unreliable, it is unimpeached and none of the defendants attempted to deny the same. Where it lies within the power of a party to an action to produce evidence upon an issue, and he fails, the presumption follows that the evidence, if produced, would be unfavorable to the cause of such party. Thompson v. Coker, 112 Okla. 268, 241 P. 486. The consideration of $400 stated in the second guardian's deed, if paid at all, was paid to that witness, and, after her testimony, it was incumbent upon the defendants to show the payment of the $400 consideration. When they failed to introduce evidence on that subject, this court must conclude that the testimony of the witness was correct. We cannot assume, as we are requested to do by the defendants, that the consideration stated in the deed was paid, in view of the positive testimony that it was not paid. The defendants contend that Eulahmae Reed is liable for the purchase price that was not paid, and they cite authority to that effect. We agree with that contention. While the plaintiffs might have brought an action against Eulahmae Reed for the recovery of the purchase price of the land, they did not do so. They elected to proceed in this action for the cancellation of the deed and the quieting of their title. The question of the failure to pay the purchase price may be raised as to Eulahmae Reed, but it may not be raised as to an innocent purchaser for value from Eulahmae Reed, such purchaser being entitled to rely on the presumption arising from the delivery of the deed that the consideration therefor was paid. The record, however, shows nothing to support a plea of innocent purchaser. Bigpond v. Page, 125 Okla. 282, 257 P. 793. So far as this record is concerned, there is no proof of innocent purchaser.

·What was the effect of the failure to pay the consideration? In Brockman ˙v. Roberts, 89 Okla. 59, 213 P. 543, it was held that a guardian is unauthorized to deliver a deed to his ward's property without receiving the payment, as provided for in the statute; that "A guardian who delivers a deed to his ward's real property pursuant to an order of the court confirming the sale, without having received the purchase price for the real estate sold in the manner provided in the statute, has committed a fraud upon the probate court confirming the sale and his ward's estate," and that such a sale may be vacated in an action by the ward. Therein this court said:

"A sale made by guardian of his ward's real estate under an order of the probate court is not a completed sale until the purchaser accepts the deeds, the consideration is paid, and the terms of the order of sale complied with by the purchaser, and where the purchaser fails to comply with the terms of the sale, the sale proceedings may be avoided. Ennis v. Cator (Tex. Civ. App.) 174 S. W. 947."

The defendants cite nothing to the contrary.

The plaintiffs contend:

"At the time of the sale, there was outstanding and of record an apparently valid guardian's deed to W. C. Bunyard which of necessity would chill the bidding."

At the time of the second guardian's sale, the recorded legal title to the land was in W. C. Bunyard. The record herein shows nothing that gives notice to any person that that was not a valid conveyance of the real estate. Why did Eulahmae Reed pay $250 of the $400 consideration stated in the deed for a guardian's deed to real estate, the title to which had theretofore been conveyed to W. C. Bunyard? We will not attempt to answer that question. Eulahmae Reed might have furnished an answer, but she did not testify in the case and there is no answer shown in the record. The admission that W. C. Bunyard held the legal title for Ray W. Reed, and that after the death of Ray W. Reed he conveyed the title to Eulahmae Reed, tends to show that the second sale was for the purpose of confirming the prior sale. Eulahmae Reed, as the wife of Ray W. Reed, was in a position where she could safely bid at a second sale, while no one else could have bid at a second sale without realizing that he was buying a lawsuit. To that extent she had an advantage over other persons in bidding at the sale. A different situation is presented from that shown by the record in Rorex v. Karcher, 101 Okla. 195, 224 P. 696, and in Scott v. Gypsy Oil Co., 112 Okla. 13, 239 P. 887.

There was error in the trial court in refusing to consider the first guardian's deed in determining whether or not the second guardian's deed was valid. For that error, this cause is reversed and remanded to the district court of Seminole county, with directions to vacate the judgment heretofore rendered and to take further proceedings not inconsistent herewith.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, and KORNEGAY, JJ., concur. McNEILL, J., absent. .