## HAGLER et al. v. BISHOP et al.

No. 20995.   Opinion Filed Nov. 17, 1931.

Rehearing Denied March 29, 1932.

J. L. Emerick, for plaintiffs in error.

Billingsley & Stanley and A. M. Fowler, for defendants in error.

HEFNER, J.   The validity of a mineral grant to an undivided one-half interest in 120 acres of land located in Seminole county is involved in this appeal.

J. D. Hagler was the owner of the land and on the 10th day of March, 1919, joined by his wife, Gussie Hagler, executed an oil and gas lease thereon to A. P. Gibson. The lease was thereafter acquired by the Shaffer Oil & Refining Company, which company subsequently produced large quantities of

oil therefrom. On the 1st day of February, 1926, J. D. Hagler and his wife executed to Homer H. Bishop a mineral grant whereby they conveyed to him an undivided one-half interest in and to all the oil, gas, and other minerals in and under the land. Thereafter, the Haglers repudiated this deed and claimed to be the owners of and entitled to collect from the Shaffer Oil & Refining Company all of the royalty provided for in the lease. The Shaffer Oil & Refining Company then brought this action in the district court against Mr. and Mrs. Hagler, Homer H. Bishop, and his grantees for the purpose of determining who was entitled to collect the royalty and the proportionate part thereof each was entitled to collect. W. A. Bishop, father of the defendant Homer H. Bishop, intervened in the action and filed his interplea in which he alleged that he was the owner of one-half of the mineral rights in the land and that the title thereto was taken in the name of Homer H. Bishop in trust for him. He further alleged that he purchased this interest in the mineral rights from J. D. Hagler for an agreed price of $50 per acre and that the consideration has been fully paid by him and accepted by Hagler.

Defendants Mr. and Mrs. Hagler answered denying the execution of the mineral grant. They further alleged that they entered into an agreement with W. A. Bishop whereby he was to sell one-half of the mineral rights at the best price obtainable and that they were to pay him 5 per cent. commission for his services. These defendants further alleged that at the time this agreement was entered into W. A. Bishop was their attorney and was then representing them in certain litigation pertaining to the land in controversy. That they did not know that they had signed a mineral grant, but that they did sign certain papers when requested so to do by Mr. Bishop. They further alleged that Bishop thereafter sold 30 acres of the mineral rights for $3,000 and that he represented to them that this sum was the full sale price of the entire one-half interest in the minerals. They further alleged that Bishop thereafter disposed of all the mineral rights except 20 acres thereof to other parties who were innocent purchasers, and prayed that the deed to the 20 acres retained by Bishop be canceled and that they recover against Bishop the sum of $3,000, the value of the mineral interests sold.

Each of the parties introduced evidence tending to sustain their contentions. The trial court found the issues in favor of Bishop and rendered judgment sustaining the mineral grant. We do not think it necessary to discuss the evidence in detail, as the trial court, at the request of defendants, Mr. and Mrs. Hagler, made specific findings of fact and these findings are not challenged.

It is the contention of these defendants that the court should have entered judgment in their favor on the findings. The findings so far as material to a decision are as follows:

"(1) That on the 1st day of February, 1926, J. D. Hagler and Gussie Hagler sold to W. A. Bishop for a consideration of $50 an acre, an undivided one-half interest in all of the oil and gas lying in or under the land in controversy (describing it), and pursuant to such sale, executed their royalty deed on said date conveying title to such royalty interest to Homer H. Bishop, the son of W. A. Bishop, he, the said Homer H. Bishop holding the naked legal title as grantee in such deed in trust for W. A. Bishop.

"(2) That no part of the purchase price for the royalty interest conveyed by such deed was paid until March 8, 1926, at which time the sum of $3,000, the full purchase price for said royalty interest, was paid to J. D. Hagler and Gussie Hagler, $2,000 to J. D. Hagler, and $1,000 to Gussie Hagler, by their agreement and at their request, with full knowledge on their part that they were receiving same as full and complete settlement of their interest in said royalty.

"(3) That on the 1st day of February, 1926, and for sometime prior thereto, said W. A. Bishop was acting as attorney for J. D. Hagler and Gussie Hagler in litigation involving the tract of land involved in this action, but the court finds that on February 1, 1926, $50 per acre was a fair, adequate price to pay for such royalty interest, although shortly after the 1st of February, 1926, and prior to the payment of the consideration, the market value of said royalty interest greatly increased in value.

"(4) The court is unable to find that any other contract relative to this royalty interest was entered into between J. D. Hagler and Gussie Hagler and W. A. Bishop than as expressed in the royalty deed above referred to.

"(5) The court further finds that there is no evidence of any conspiracy between W. A. Bishop and Homer H. Bishop or between them and any other person to defraud J. D. Hagler and Gussie Hagler, and the court is unable to find that any fraud was practiced upon J. D. Hagler and Gussie Hagler to obtain their signatures to the royalty deed or to the receipts given by them for the purchase price of $3,000. * * *

"I gathered from all the testimony of both sides, part of which was the insistence

all the while on the part of Mr. Hagler that he ought to have his money immediately and that his actions as related, not only by other witnesses, but by himself, were such that it is evidence he thought his money was being held up far longer than it should be, but I am unable to find any agreement as to a definite date when this money should be paid. Of course, if there had been an agreement as to the definite date when the money should be paid and the money on that date was not paid, that would be a breach of the contract that would entitle Hagler to rescind. The only conclusion that I can arrive at in that regard is that this contract would be a binding contract immediately upon execution and delivery of the mineral deeds and that Hagler was entitled to have the payment of the purchase price within a reasonable time. What that reasonable time was, no evidence has been introduced. * * *

"The court finds, at the request of the attorney for the Haglers, the court finds that there is no evidence indicating that at the time the purchase price was paid for this land, that W. A. Bishop or Homer Bishop notified the Haglers that the market value of the royalty interest conveyed had greatly increased, nor did they advise them that a part of this royalty interest had already been sold at a price of $100 per acre."

Defendants Mr. and Mrs. Hagler assert that under these findings it was the duty of Bishop, as their attorney, to have advised them before they accepted the money due them for the sale of the mineral rights that he, Bishop, had only a reasonable time after the delivery of the mineral deed to examine the title and pay the money, and that if he, Bishop, failed to do so within such time, they had a right to rescind the contract; and that he should have advised them that the market value thereof had materially advanced; and in support of this contention cite the case of Watts v. Jackson, 75 Okla. 123, 182 P. 508, and other cases in which the following rule is announced:

"Although an attorney is not under an absolute disability to purchase his client's property, where he does so during the existence of the relation of attorney and client with respect to the property so purchased, he assumes the heavy burden of proving his utmost good faith and fairness in the transaction and that he paid an adequate consideration for the property. He must also show that he fully informed his client of all the material facts and gave the same disinterested advice he would have given had the sale been made to a stranger."

It is true, as contended, that Bishop had only a reasonable time to examine the title, and pay the money and, if he failed to act within such time, defendants Mr. and Mrs. Hagler would have been entitled to rescind the contract. Counsel may also be correct in the assertion that because of the confidential relationship existing between the parties it was the duty of Bishop to have advised the Haglers as to their rights; still his failure so to do would not be sufficient to defeat the deed in the absence of a showing that Bishop did not act within a reasonable time, and that the Haglers would have rescinded the contract had they been advised of their rights. Neither of these facts are pleaded by the Haglers, nor under the findings of the trial court are they established by the evidence. The evidence does disclose that Bishop did not approve the title and pay the money until the 8th day of March, 1926, and that the market value of the mineral rights had materially advanced at that time. There is also evidence to the effect that the delay in paying the money was due to the fact that Bishop wanted to satisfy himself as to the title. Under the findings of the trial court the evidence was insufficient to justify a finding that Bishop did not act within a reasonable time.

As to the contention that Bishop failed to advise the Haglers of the advance in the market price of the mineral rights, it is sufficient to say that by their own evidence they admit that they knew of such advance in the price at the time they accepted the money. They were therefore not deceived by the failure of Bishop to so advise them. The burden was, of course, on Bishop to show the good faith of the transaction, but, under the findings of the trial court, which are not challenged, he has fully met and discharged this burden.

The judgment is affirmed.

CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., and ANDREWS, J., absent.