## CARTER v. WILSON.

No. 23103. Opinion Filed Nov. 1, 1932.

Rehearing Denied Dec. 27, 1932.

Bond & Bond, for plaintiff in error.

Paul D. Sullivan, for defendant in error.

KORNEGAY, J. This is a proceeding in error to review the action of the district court of Stephens county, Honorable W. G. Long, judge, in an action tried by the court to cancel a deed purporting to have been executed by Willie Wilson, a deceased ward, to G. W. Carter, the plaintiff in error, in this case, on the ground of undue influence of the grantee over the grantor, and the lack of consideration. Suit was filed May 19, 1926.

A power of attorney and certain receipts, given by the ward to the plaintiff in error, who was the guardian, were referred to in the petition. In one part of the petition the land claimed is described as the E. ½ of the W. ½ of the W. ½ of the N. E. ¼ of sec. 8, twp. 2 N., R. 7 W., which would contain 20 acres. The power of attorney, purporting to have been executed on the 23rd of July, 1927, and recorded on the 29th of July, 1927, covers this 20 acres of land, but the deed sought to be set aside covers the W. ½ of the W. ½ of the N. E. ¼. The deed purported to have been acknowledged before R. H. Morgan, a notary public, on the 17th of December, 1927, and filed for record on the 27th of February, 1928. An amended petition was filed, attacking the deed as being without consideration and being signed, if signed at all, at a time when the defendant below had possession of the land, and also was holding it under power of attorney, and there was no consideration for the deed. Demurrer was overruled, and an answer filed,

setting up a purchase on the 6th of December, 1928, for $1,000, as shown by a receipt executed on the 27th of November, 1928, a copy of which is set out as an exhibit to the answer.

The original plaintiff died, and the cause was revived in the name of the administratrix, the wife of the intestate. The case was tried on the 20th of March, 1931. Numerous witnesses were introduced to establish that the original ward apparently had no money, and attacking the proceedings and the various receipts, and also showing the confidential relation existing between the original plaintiff and the defendant, and defendant's influence over plaintiff, both before the ward arrived at the age of 21 and afterwards, and showing that the plaintiff in error was handling the property quite a while after the ward reached the age of 21.

The accounts of the intestate at the banks were shown, indicating very little money was ever handled by him through that means. There was also testimony as to conversations between the defendant and others with reference to the lawsuit, and the efforts of the plaintiff in error to get it dismissed. Proof was made also of the intestate having some money in the Indian Agent's office at Muskogee. There is also proof as to the business capacity of the intestate, and as to how he lived before and after his marriage. Demurrer to the evidence was interposed and overruled, and the plaintiff in error, the defendant below, introduced testimony to sustain the validity of the deed. Among others was that of the attorney who acted as notary in the taking of the deed. He detailed the circumstances of the execution, and among other things he stated that he prepared the check for the $1,000 on the State National Bank of Marlow, and it was signed by the plaintiff in error, and it was stated by the intestate in his presence that this was the balance for this piece of land. The deed, as set out on page 185 of the record, calls for 40 acres of ground, both in the numerical description and in the containing clause. In the testimony, however, the deed is referred to as conveying 20 acres of ground.

Testimony was adduced as to the efforts of others to buy the land, and declarations of the intestate that he had sold the land. It was claimed on the trial that the check evidencing the payment of $1,000 had been surrendered to the intestate, but this was denied, and there was a denial of the statements attributed to the plaintiff in error. Testimony was adduced to the effect that the land was worth far more than was allowed for it, if there were only 20 acres

of the land, one witness going as high as $150 an acre and figuring that $100 would be a conservative estimate as to its value. There was testimony as to the business capacity of the ward, and also as to the dealings of the intestate with reference to buying and using automobiles, and the former guardian, plaintiff in error, testified as to the dealings in getting a car for the widow and the conduct of the guardian with reference to the suppression of the lawsuits, after the death of the original plaintiff, also the papers in the guardianship matter.

The final report of the guardian was verified on the 4th of July, 1927, and approved as being correct by the ward on that day. It was indorsed "filed" on the 3rd of August, 1927, by the court clerk. The power of attorney to deal with the lands of the ward was made on the 23rd of July, 1927, and filed for record on the 29th of July, 1927. The revocation appears to have been made the 18th of March, 1929, and to have been recorded on the same date.

Neither party asked for special findings or declarations of law, and at the conclusion of the evidence the court found that the allegations of the petition were true, and especially that the deceased was the owner of the 20 acres of land, cloud on title to which was sought to be cleared, and that the deed given for it was given without consideration, and that at the time of the making of the same, if it was made, the relationship of Willie Wilson to the grantee was that of guardian and ward, and held that the deed was illegal and void and canceled it and removed it from the records, and enjoined Carter and all others claiming under him from asserting rights in the land, and quieted the title in the heirs of the deceased. An option was given to the plaintiff in error to pay $1,250 and cost of the action within 60 days, in which event title to the land would be vested in the plaintiff in error. Exceptions were taken, followed by motion for new trial, its being overruled, and appeal to this court.

A lengthy brief has been filed by the plaintiff in error, reciting a large part of the testimony, and complaining of overruling the motion for new trial, and the demurrer to the amended petition, and the refusal to strike parts of the petition, and the overruling of the demurrer to the evidence, and rendering judgment for the defendant in error, and not rendering judgment for the plaintiff in error, and in admitting evidence, and in giving the option. However, the discussion appears to be centered on the proposition as to whether or not the court was justified in rendering the judgment, and the weight of the evidence that was offered by the parties. Some cases are cited as to positive and negative testimony, and the necessity of pleading and proving fraud and the manner of pleading it, and discussion is had as to the evidence that was introduced for the purpose of establishing fraud, and a review is had of the evidence, and some cases as to the presumption of the validity of a deed between father and son, and the fact that fraud is not presumed, and the duty of this court to weigh the evidence and set aside the judgment of the trial court in an equity case, and reliance is placed upon the relationship and the necessity for establishing fraud and the strength of negative testimony as compared with positive, some being from this jurisdiction, some from others. Text-writers are cited and quoted from, and also reference is made to the final report made up on the 4th of July, and filed on the 3rd of August, and the statement of the ward therein contained. A good deal of discussion is had as to the effect of the testimony of the one who drew the deed. Comment is made upon the business ability of the ward, and his trades for automobiles and his signing up a second receipt on November 27, 1928.

Harrison v. Reed, 154 Okla. 39, 6 P. (2d) 700, decided by this court, is cited. However, if that case is followed to its logical conclusion, and especially on the subject of the failure to produce proof when it is in the power of the party to do so in fiduciary relations, it is rather against the contentions of the plaintiff in error. A significant matter that is spoken of is the proposition of paying for the land as evidenced by a check that is claimed to have been indorsed with a statement as to what it was for and drawn on the State National Bank. It seems to us that when the existence of the check was so emphatically denied by the representatives of the intestate, that the other side claimed was delivered and which plaintiff in error claimed had gone through the bank, an inspection of the bank's books would have thrown convincing and corroborating light on the subject, and as the affirmative of making the payment in this case rested upon the plaintiff in error, his failure to make an examination of the bank books, to show that such a check was cashed on his account about that time, would be rather against him.

Complaint is made of the judgment rendered, and the argument as to immaterial testimony is based upon its being negative, and also an argument is made on the prop-

osition of witnesses being allowed to give their various judgments as to the capacity of the intestate. Both sides, however, seem to have indulged in that. Complaint is made of the option being given. Perhaps that might not have been warranted by the evidence, but the plaintiff in error was not compelled to follow the option and the defendant in error has not appealed. The argument is made that the smallness of the consideration, except where there is fraud, is not sufficient to warrant cancellation.

The counter brief refers to a case in this court of Daniel v. Tolon, 53 Okla. 666, 157 P. 756, 4 A. L. R. 704. That case was decided in 1916 on the subject of the dealings between guardian and ward, in which the broad doctrine is laid down, as fairly expressed in paragraphs 2 and 3 of the syllabus, as follows:

"2. Courts watch with great jealousy transactions of guardians with their wards, or any dealings between them affecting the estate of the ward. From the confidential relations between them, it will be presumed that the ward was acting under the influence of the guardian, and all transactions between them prejudicially affecting the interests of the ward will be held to be constructively fraudulent. This presumption extends to transactions between them after the guardianship has ended, but where the influence remains, and the control and dominion over the former ward's property still continues.

"3. The equitable rules concerning dealings between guardian and ward are very stringent. The relation is so intimate, the dependence so complete, the influence so great, that any transaction between the two parties, or by the guardian alone, through which the guardian obtains a benefit, entered into while the relation exists, are in the highest sense suspicious; the presumption against them is so strong that it is hardly possible for them to be sustained. The general doctrine of equity applies to the parties after the legal condition of guardianship has ended, and as long as the dependence on one side and the influence on the other presumptively or in fact continues. This influence is presumed to last while the guardian's functions are to any extent still performed, while the property is still at all under his control, and until the accounts have been finally settled. Any conveyance, purchase, sale, contract, and, especially, gift, by which the guardian derives a benefit at the expense of the former ward made after the termination of the legal relation, but while the influence lasts, is presumed to be invalid and voidable. The burden rests heavily upon the guardian to prove all the circumstances of knowledge, free consent, good faith, absence of influence, which alone can overcome the presumption."

There are some other cases upon the same line, and quotations are made in that from former cases, and the doctrine is traced far back.

As applied to the present case, the trial court saw the witnesses, heard their testimony, made the findings it did. We cannot say that its judgment was against the weight of the evidence, and the cause is accordingly affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur.

Note.—See under (1) R. C. L. Perm. Supp. p. 3274.